(627 P.2d 831)

No. 51,712

DOROTHY MOORE and KENT REINHARDT, *Appellees,* v. RUBY F. PHILLIPS, as Executrix of the Estate of Ada Chloe Brannan, Deceased, *Appellant.*

Petition for review denied July 16, 1981.

Opinion filed April 24, 1981.

*Morgan Wright,* of Larned, for appellant.

*Richard L. Friedeman,* of Conner & Opie, of Great Bend, for appellees.

Before JUSTICE PRAGER, presiding, ABBOTT, J., and J. PATRICK BRAZIL, District Judge, assigned.

PRAGER, J.: This is a claim for waste asserted against the estate of a life tenant by remaindermen, seeking to recover damages for the deterioration of a farmhouse resulting from neglect by the life tenant. The life tenant was Ada C. Brannan. The defendant-appellant is her executrix, Ruby F. Phillips. The claimants-appellees are Dorothy Moore and Kent Reinhardt, the daughter and grandson of Ada C. Brannan.

The facts in the case are essentially as follows: Leslie Brannan died in 1962. By his will, he left his wife, Ada C. Brannan, a life estate in certain farmland containing a farmhouse, with remainder interests to Dorothy Moore and Kent Reinhardt. Ada C. Brannan resided in the farmhouse until 1964. She then rented the farmhouse until August 1, 1965, when it became unoccupied. From that point on, Ada C. Brannan rented all of the farmland but nobody lived in the house. It appears that from 1969 to 1971 it was leased to the remaindermen, but they did not live there. It is

undisputed that the remaindermen inspected the premises from time to time down through the years. In 1973, Ada C. Brannan petitioned for a voluntary conservatorship because of physical infirmities. In 1976, Ada C. Brannan died testate, leaving her property to others. Dorothy Moore and Kent Reinhardt were not included in Ada's bounty. From the record, it is clear that Ada C. Brannan and her daughter, Dorothy Moore, were estranged from about 1964 on. This estrangement continued until Ada Brannan's death, although there was minimal contact between them from time to time.

After Ada Brannan's death, Dorothy Moore and Kent Reinhardt filed a demand against the estate of Ada Brannan on the theory of waste to recover damages for the deterioration of the farmhouse. The total damages alleged were in the amount of $16,159. Both the district magistrate and the district judge inspected the premises and found deterioration due to neglect by the life tenant. The district court found the actual damages to the house to be $10,433. The executrix of Ada's estate denied any neglect or breach of duty by Ada Brannan as life tenant. She asserted the defenses of laches or estoppel, the statute of limitation, and abandonment. These affirmative defenses were rejected by the district magistrate and the district judge, except the defense of laches or estoppel which the district magistrate sustained. On appeal, the district judge found that the defense of laches or estoppel was not applicable against the remaindermen in this case. Following entry of judgment in favor of the remaindermen, the executrix appealed.

It is important to note that the executrix does not contend, as points of error, that the life tenant was not responsible for deterioration of the farmhouse or that the action is barred by a statute of limitations. The amount of damages awarded is not contested. In her brief, the executrix-appellant asserts four points which essentially present a single issue: Whether the remaindermen, by waiting eleven years until the death of the life tenant before filing any claim or demand against the life tenant for neglect of the farmhouse, are barred by laches or estoppel?

The executrix contends, in substance, that laches and estoppel, although considered to be equitable defenses, are available in an action at law to recover damages. She points out,that, under K.S.A. 58-2523, a remainderman may sue to prevent waste during

the life of the tenant while the life tenancy is still in existence. She then notes that the remaindermen inspected the premises on numerous occasions during the eleven years the property was vacant; yet they made no demand that the farmhouse be kept in repair. They waited until the death of the life tenant to bring the action, because then they would not be faced with Ada's testimony which might defeat their claim.

The remaindermen, in their brief, dispute certain factual statements made by the executrix. They agree that the remaindermen had very limited contact with the life tenant after the estrangement. They contend that there is evidence to show the vast majority of the damage to the house occurred during the last two or three years of the life tenancy and that Dorothy Moore did, in fact, express concern to her mother about the deterioration of the house 15 to 20 times during the eleven-year period. They contend that mere passage of time does not constitute laches and that, in order to have laches or estoppel, the person claiming the same must show a detrimental change of position or prejudice of some kind. They argue that the executrix has failed to show any prejudice, since the fact of waste and deterioration is clear and undisputed and there is nothing the testimony of the life tenant could have added on that issue had she been at the trial. As to the failure of the remaindermen to file an action in the lifetime of the life tenant, the remaindermen argue that claimants had been advised to avoid contact with Ada Brannan unless it was absolutely necessary and that they did not want to make a claim during her lifetime since it would have only made a bad situation worse. They maintain that they had good reasons to wait until Ada's death to assert the claim.

In order to place this case in proper perspective, it would be helpful to summarize some of the basic principles of law applicable where a remainderman asserts a claim of waste against a life tenant. They are as follows:

(1) A life tenant is considered in law to be a trustee or quasi-trustee and occupies a fiduciary relation to the remaindermen. The life tenant is a trustee in the sense that he cannot injure or dispose of the property to the injury of the rights of the remaindermen, but he differs from a pure trustee in that he may use the property for his exclusive benefit and take all the income and

profits. *Windscheffel v. Wright,* 187 Kan. 678, 686, 360 P.2d 178 (1961); *In re Estate of Miller,* 225 Kan. 655, 594 P.2d 167 (1979).

(2) It is the duty of a life tenant to keep the property subject to the life estate in repair so as to preserve the property and to prevent decay or waste. 51 Am. Jur. 2d, Life Tenants and Remaindermen § 259, pp. 546-548. Stated in another way, the law imposes upon a tenant the obligation to return the premises to the landlord or remainderman at the end of the term unimpaired by the negligence of the tenant. *Salina Coca-Cola Bottling Corp. v. Rogers,* 171 Kan. 688, 237 P.2d 218 (1951); *In re Estate of Morse,* 192 Kan. 691, 391 P.2d 117 (1964).

(3) The term "waste" implies neglect or misconduct resulting in material damages to or loss of property, but does not include ordinary depreciation of property due to age and normal use over a comparatively short period of time. *First Federal Savings & Loan Ass'n v. Moulds,* 202 Kan. 557, 451 P.2d 215 (1969).

(4) Waste may be either voluntary or permissive. Voluntary waste, sometimes spoken of as commissive waste, consists of the commission of some deliberate or voluntary destructive act. Permissive waste is the failure of the tenant to exercise the ordinary care of a prudent man for the preservation and protection of the estate. 78 Am. Jur. 2d, Waste § 3, p. 397.

(5) The owner of a reversion or remainder in fee has a number of remedies available to him against a life tenant who commits waste. He may recover compensatory damages for the injuries sustained. He may have injunctive relief in equity, or, in a proper case, may obtain a receivership. The same basic remedies are available against either a tenant for years or a life tenant. *Kimberlin v. Hicks,* 150 Kan. 449, 456, 94 P.2d 335 (1939).

(6) By statute in Kansas, K.S.A. 58-2523, "[a] person seized of an estate in remainder or reversion may maintain an action for waste or trespass for injury to the inheritance, notwithstanding an intervening estate for life or years." Thus a remainderman does not have to wait until the life tenant dies in order to bring an appropriate action for waste.

(7) Where the right of action of the remainderman or landlord is based upon permissive waste, it is generally held that the injury is continuing in nature and that the statute of limitations does not commence to run in favor of the tenant until the expiration of the tenancy. Under certain state statutes, it has been held that the period of limitation commences at the time the waste is commit-

ted. *Prescott, Exor. of Mary E. Prescott v. Grimes,* 143 Ky. 191, 136 S.W. 206 (1911); *In re Stout's Estate,* 151 Or. 411, 50 P.2d 768 (1935).

(8) There is authority which holds that an action for waste may be lost by laches. *Harcourt v. White,* 28 Beavan's 303, 54 Eng. Reprint 382 (1860); 78 Am. Jur. 2d, Waste § 38, p. 424. Likewise, estoppel may be asserted as a defense in an action for waste. The doctrine of laches and estoppel are closely related, especially where there is complaint of delay which has placed another at a disadvantage. Laches is sometimes spoken of as a species of estoppel. Laches is a wholly negative thing, the result of a failure to act; estoppel on the other hand may involve an affirmative act on the part of some party of the lawsuit. The mere passage of time is not enough to invoke the doctrine of laches. Each case must be governed by its own facts, and what might be considered a lapse of sufficient time to defeat an action in one case might be insufficient in another. Laches, in legal significance, is not mere delay, but delay that works a disadvantage to another. *Clark v. Chipman,* 212 Kan. 259, 510 P.2d 1257 (1973). The defense of laches may be applied in actions at law as well as in equitable proceedings. *McDaniel v. Messerschmidt,* 191 Kan. 461, 464, 382 P.2d 304 (1963). In *Osincup v. Henthorn,* 89 Kan. 58, 130 Pac. 652 (1913), it was held that laches is an equitable defense and will not bar a recovery from mere lapse of time nor where there is a reasonable excuse for nonaction of a party in making inquiry as to his rights or in *asserting* them.

The basic question for our determination is whether the district court erred in holding that the defense of laches or estoppel should not be applied in this case. We have concluded that the district court did not commit error in its rejection of the defense of laches or estoppel under the circumstances of this case. In reaching this conclusion, we have noted the following factors: The evidence is clear that the life tenant, Ada Brannan, failed to carry out her duty as life tenant and quasi-trustee to keep the property in reasonable repair. The claim of waste does not arise out of any act on the part of the remaindermen. Preservation of the property was the responsibility of the life tenant. There was evidence to show that the vast majority of the damage to the farmhouse occurred during the last two or three years of the life tenancy. The fact that permissive waste occurred was proved

beyond question. If the life tenant had been alive, she could not very well have disputed the fact that the property had been allowed to deteriorate. Hence, any delay in filing the action until after Ada's death could not have resulted in prejudice to her executrix. There is no evidence in the record to support the defense of estoppel.

Furthermore, the evidence was undisputed that the life tenant was an elderly woman who died in August of 1976 at the age of 83. The position of Dorothy Moore was that she did not wish to file an action which would aggravate her mother and take funds which her mother might need during her lifetime. Even though Dorothy Moore was estranged from her mother, the law should not require her to sue her mother during her lifetime under these circumstances. As noted above, it was the tenant's obligation to see that the premises were turned over to the remaindermen in good repair at the termination of the life estate. Under all the circumstances in this case, we hold that the district court did not err in rejecting the defense of laches or estoppel.

The judgment of the district court is affirmed.