KODIAK ELECTRIC ASSOCIATION, INC., and American Motorists Insurance Company, Appellants,

v.

DELAVAL TURBINE, INC., Westinghouse Electric Corp., and Portec, Inc., Appellees.

DELAVAL TURBINE, INC., Cross-Appellant,

v.

KODIAK ELECTRIC ASSOCIATION, INC., and American Motorists Insurance Company, Cross-Appellees.

Nos. 7871, 7896.

Supreme Court of Alaska.

Dec. 21, 1984.

Rehearing Denied Feb. 24, 1985.

Roger Holmes, Biss & Holmes, Anchorage, James P. Rohrback, Keller, Rohrback, Waldo, Hiscock, Butterworth & Fardal, Seattle, for appellants/cross-appellees.

Francis E. Smith, Jr., Ely, Guess & Rudd, Anchorage, for appellee/cross-appellant DeLaval Turbine.

James M. Powell and James F. Klasen, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee Westinghouse.

Before BURKE, C.J. and RABINOWITZ, and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

■ This case arose when a diesel generator failed, causing alleged damage to property owned by the plaintiff below, Kodiak Electric Association. The superior court granted summary judgment in favor of the defendants, DeLaval Turbine, Inc. and Westinghouse Electric Corporation. This appeal and cross-appeal followed.[1]

### I

In October, 1974, Kodiak Electric and DeLaval entered into a contract for the sale of a "remanufactured" diesel generator unit to Kodiak Electric. The unit had two principal components, an engine and a generator, neither of which was to be provided new. Under the contract terms, DeLaval agreed to provide a used engine that was "completely dismantled and re-manufactured to 'as new' condition." In contrast, the used generator, which is the component at issue in this case, was only to be "cleaned, inspected, repaired as required, and tested by a competent firm." The generator was originally manufactured by Allis-Chalmers.

The generator repair work was performed by Westinghouse in October, 1974, at DeLaval's request.[2] The unit, which became known as Unit 10, was delivered to Kodiak Electric during 1976. Testing was completed in March, 1977.

The original contract contained a limited warranty provision which expired eighteen months from the date of shipment. By letter dated January 5, 1976, DeLaval extended the warranty to February 28, 1978.

The Unit 10 generator failed on February 7, 1979. No other property or persons were injured *at the time it failed.* About three weeks later, however, a separate generator unit, Unit 12, failed. Kodiak Electric alleged that the failure of the second unit was due to overload caused by the failure of Unit 10.

Kodiak Electric[3] did not commence this action until February 4, 1982, nearly three years after the generator failures. Kodiak Electric sought damages from DeLaval and Westinghouse under five alternative theo-

---

1. In reviewing the granting of a motion for summary judgment, this court will draw all reasonable inferences in favor of the non-moving party. *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.,* 604 P.2d 1113, 1116 (Alaska 1980).

2. During the course of this repair work, Westinghouse repaired the fan blades inside the generator.

3. Kodiak Electric's insurer, American Motorists Insurance Company, has also been a plaintiff throughout the course of this litigation.

ries: breach of an implied warranty of fitness and merchantability, breach of express warranty, negligence, strict liability and breach of contract.

■ DeLaval and Westinghouse each moved for summary judgment, and the superior court granted their motions, although not on all grounds urged by DeLaval. The court found that Kodiak Electric had no cause of action under express and implied warranty theories against either party, and no claim for strict liability in tort against Westinghouse. The remaining claims were all held to be barred by AS 09.10.070, a two year statute of limitations. Kodiak Electric appeals from each of these rulings,[4] and DeLaval cross-appeals on one issue.

## II

### A. *Strict Liability in Tort*

The trial court held that Kodiak Electric could maintain a strict liability action against the seller of the used generator, DeLaval, but not against the repairer of the generator, Westinghouse. By way of cross-appeal DeLaval contests the first holding; Kodiak Electric appeals the second.

■ In order to prevail on a claim of strict liability in tort *when no personal injury has occurred,* the plaintiff must show "property damage" as opposed to mere "economic loss." *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 286 (Alaska 1976). In the instant case, the trial court found that there was property damage, based on the fact that there was evidence of damage to Unit 12 as a result of the failure of Unit 10. As alternative support for this conclusion, Kodiak Electric points to an affidavit it submitted to the

trial court which described the accident as causing an electrical fire in the generating unit and arcing on the unit. The affidavit stated that it was customary for two controlmen to go near the unit and that had they been near it at the time, they could have been seriously injured by the arcing. Kodiak Electric contends that the potential for personal injury thus created, combined with the damage to Unit 12, puts this case into the "property damage" category.

■ In *Northern Power & Engineering Corp. v. Caterpillar Tractor Co.,* 623 P.2d 324 (Alaska 1981), a diesel powered electrical generator's engine failed, resulting in severe damage to the machine but causing no additional damage to persons or property. We affirmed the trial court's finding that the loss was "entirely economic," since there was "no evidence in the record that such a defect presented a danger to persons or other property and no evidence of violence, fire, collision with external objects, or other calamity as a result of this failure." 623 P.2d at 329–30. Here, in addition to the electrical fire causing damage to Unit 10 itself, and the alleged damage to Unit 12, there was evidence of arcing, which presented a serious danger to persons. Thus, we believe the result in this case is controlled by our holding in *Northern Power:*

> [W]hen a defective product creates a situation potentially dangerous to persons or other property, and loss occurs as a result of that danger, strict liability in tort is an appropriate theory of recovery, *even though the damage is confined to the product itself.*

623 P.2d at 329 (emphasis added).[5] *See State v. Tyonek Timber, Inc.,* 680 P.2d 1148 (Alaska 1984) (distinction between property loss and economic loss further

**4.** Although Kodiak Electric's statement of points on appeal alleges error in regard to each cause of action against each party, Kodiak Electric did not adequately brief the implied warranty claim as to either party nor the express warranty claim as to Westinghouse, so we consider these issues abandoned. Alaska R.App.P. 212; *Wetzler v. Wetzler,* 570 P.2d 741, 742 n. 2 (Alaska

1977); *Fairview Development, Inc. v. City of Fairbanks,* 475 P.2d 35 (Alaska 1970).

**5.** According to Kodiak Electric's affidavit there was evidence of actual danger. Thus, this is not a case of "allowing recovery solely on proof that a defect *could* endanger persons." *Northern Power* 623 P.2d at 329, n. 11 (emphasis in original).

explained). Given this potential danger to persons, it is not necessary for us to decide whether the trial court was correct in finding that there was "property damage," because of the alleged damage to Unit 12.

We affirm the superior court's denial of summary judgment to DeLaval, although on a rationale somewhat different than that used by the trial court.[6]

Kodiak Electric cannot prevail, however, on its strict liability claim against Westinghouse. Westinghouse did not manufacture generator Unit 10, nor did it sell that product to Kodiak Electric. All that Westinghouse provided was repair service. The "request that [Westinghouse] repair or even 'rebuild' [the generator]" is not sufficient ground upon which to hold it a manufacturer or seller, strictly liable in tort. *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Co.*, 604 P.2d 1113, 1117 (Alaska 1980). We thus affirm the trial court's ruling on this claim as well.

### B. *Contractual/Warranty Claims*

Kodiak Electric contends the trial court erred in dismissing its cause of action in contract against Westinghouse, arguing that it was a third party beneficiary of the repair contract between DeLaval and Westinghouse.

This contention is without merit. In order to be an intended third party beneficiary, Kodiak Electric would have to show an intention by DeLaval to benefit Kodiak Electric under the DeLaval/Westinghouse contract. *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980). No such intention is evident here. Although Kodiak Electric would be incidentally benefitted by the generator being repaired, this would not confer on Kodiak Electric anything beyond what

---

**6.** We find unpersuasive DeLaval's argument that it cannot be held strictly liable because the product sold to Kodiak Electric was used. While the sale of a used item will not render the seller strictly liable in all instances, *Peterson v. Lou Bachrodt Chevrolet Co.*, 329 N.E.2d 785 (Ill.1975); *Tillman v. Vance Equipment Co.*, 286 Or. 747, 596 P.2d 1299 (1979), the facts before us persuade us to hold that DeLaval may be held strictly liable in this case. When, as here,

DeLaval had contracted with Kodiak Electric to perform. Westinghouse's duty was owed to DeLaval, not Kodiak Electric. *See* Restatement (Second) of Contracts § 302, at 444 (1981).

Kodiak Electric alleges an additional contract claim against DeLaval because DeLaval refused to protect it and hold it harmless from losses arising out of Westinghouse's alleged negligence. It contends that the hold harmless and indemnity provision in the contract was breached when DeLaval refused to pay for Kodiak Electric's damages.

This argument is also without merit. Kodiak Electric is not seeking to recover money it has paid to a third party for damages. The contractual provision for indemnification is relevant only in those circumstances. *See Citizens Insurance Co. of New Jersey v. Signal Insurance Co.*, 261 Or. 294, 493 P.2d 46, 47–48 (1971) ("[indemnity] requires that a common duty be mutually owed to a third party"); *Davis v. Board of County Commissioners*, 495 P.2d 21, 25 (Wyo.1972) ("It is well settled that indemnification against liability must always be regarded as having reference to existing grounds of liability and not as creating new ones.").

### III

### A. Statute of Limitations

### 1. *Strict Liability and Negligence*

One of the central issues in this appeal is whether the two-year statute of limitations contained in AS 09.10.070 or the six-year statute of limitations contained in AS 09.-10.050 is applicable to the strict liability

---

the product has undergone extensive repair, inspection and testing at the hands of the seller prior to resale, the policy considerations behind our adoption of the doctrine of strict liability favor its application. *See Clary v. Fifth Avenue Chrysler Center, Inc.*, 454 P.2d 244 (Alaska 1969) (doctrine of strict liability in tort analyzed and adopted); *see generally*, Annot., 53 A.L.R.3d 337 (1973).

and negligence claims brought by Kodiak Electric.

AS 09.10.050 provides:

No person may bring an action

(1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040 or 09.10.055; (2) for waste or trespass upon real property; or (3) for taking, detaining, or *injuring personal property*, including an action for its specific recovery, except those mentioned in AS 09.10.055; *unless commenced within six years.*

(Emphasis added).

AS 09.10.070 provides:

No person may bring an action

(1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or *rights of another not arising on contract and not specifically provided otherwise;* (2) upon a statute for a forfeiture or penalty to the state; or (3) upon a liability created by statute, other than a penalty or forfeiture; *unless commenced within two years.*

(Emphasis added).

Westinghouse and DeLaval contend that section .070, the two-year statute of limitations, should apply, as found by the trial court. They argue that the six-year provision of section .050 was intended to govern only actions for trespass. When an injury is "on the case," they contend section .070 controls. *See* W. Prosser, *The Law of Torts*, § 7 (4th ed. 1971) ("trespass" and "action on the case" compared and discussed). In their view, the injury in the instant case is "on the case" since "the failure of Kodiak Electric's generator was not the result of a direct, immediate harm, but was allegedly the result of something which occurred, or failed to occur, years before." The trial court evidently accepted this distinction and held the two-year provision of AS 09.10.070(1) applicable. Since the action was not commenced until more than two years after February 7, 1979, it was held barred. On appeal, Kodiak Electric contends that the six-year statute should apply.

By its plain terms, section .050 specifically applies to actions for "injuring personal property," the exact type of action Kodiak Electric seeks to bring. The language of the statute is clear, and "[w]e see no reason to suspect that [it] does not mean exactly what it appears to mean." *Vest v. First National Bank of Anchorage,* 659 P.2d 1233, 1234 (Alaska 1983).[7]

While DeLaval and Westinghouse raise a number of policy reasons why a shorter limitations period is preferable,[8] it is not this court's function to consider the merits of a longer or shorter limitations period when the statute is clear and unambiguous and no contrary legislative intent has been demonstrated. *University of Alaska v. Geistauts,* 666 P.2d 424, 428 n. 5 (Alaska 1983); *Municipality of Anchorage v. Sis-*

---

7. States with similar statutory provisions have uniformly held that the phrase "injuring personal property" encompasses an action for damage to personal property such as that alleged by Kodiak Electric. *E.g., Holm v. B & M Service, Inc.,* 661 P.2d 951, 952 (Utah 1983):

> There is no language in [the three-year provision] that places any limitation on the word "action" that would restrict its application to only intentional injuries to personal property. The facts of the present case fall squarely within the plain language of [the statute], which applies to "action[s] for ... injuring personal property."

*See also Automobile Insurance Co. v. Union Oil Co.,* 85 Cal.App.2d 302, 193 P.2d 48, 52 (1948); *Galbraith v. Vangas,* 103 Idaho 912, 655 P.2d 119 (1982); *Deetz v. Cobbs & Mitchell Co.,* 120 Or. 600, 253 P. 542 (1924).

8. Defendants are primarily concerned with the potential for stale claims. When a six-year limitations period is applied, and the cause of action does not commence until damages are incurred, an inordinately long time between the alleged negligent act and the commencement of litigation may result. This concern should be addressed to the legislature, not this court. We note that the Oregon legislature amended their statutes of limitations, which in regard to the two-year and six-year provisions at issue here are essentially identical to our own, to add a statute which provides, "In no event shall any action for negligent injury to ... property of another be commenced more than 10 years from the date of the act or omission complained of." Or.Rev.Stat. § 12.115 (1967).

*ters of Providence in Washington, Inc.,* 628 P.2d 22, 27 n. 6 (Alaska 1981). *See also* 2A C. Sands, Sutherland Statutory Construction § 46.01 (4th ed. 1973).

We conclude that the phrase "injuring personal property" incorporates actions for injury to tangible personal property.[9] We therefore hold that the six-year statute of limitations is applicable to Kodiak Electric's strict liability and negligence claims. Accordingly, we reverse the trial court on this issue.

### B. *Warranty Claim*

The final claim that we must consider is Kodiak Electric's breach of express warranty claim against DeLaval. The parties agree that this claim is governed by the Uniform Commercial Code, codified as AS 45.02.

AS 45.02.725 provides in part:

(a) An action for breach of a contract for sale must be commenced within four years after the cause of action has accrued....

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except that, if a warranty explicitly extends to future performance* of the goods and discovery of the breach must await the time of performance, the cause of action accrues when the breach is or should have been discovered.

(Emphasis added).

Kodiak Electric contends that the original warranty extended to future perform-

ance, and that, therefore, its claim did not accrue until February, 1979. It points to the following language in the contract as indicative of a warranty explicitly extending to future performance:

The engine, generator, and auxiliaries are designed to deliver the specified output *continuously.*

. . . .

The generator will be ... repaired as required [by DeLaval]....

(Emphasis added). DeLaval argues that when this language is read in context, it only describes the product to be delivered, it does not describe an ongoing future commitment by DeLaval.[10]

We hold that any warranty under the original contract did not extend to the future performance of the generator in 1979. Contract language that the unit will perform "continuously" and that it will be "repaired as required" was clearly intended to describe the state in which the used equipment would be delivered to Kodiak Electric. Such language would at best extend the warranty only until completion of testing. *See Binkley Co. v. Teledyne Mid-America Corp.,* 460 F.2d 276 (8th Cir. 1972). Moreover, the generator portion of the unit was not manufactured by DeLaval. Hence any warranty on this piece of equipment was expressly disclaimed under the original contract.

Even if we were to assume that the warranty extension to February, 1978, was intended to cover the type of defect which arose,[11] Kodiak Electric cannot successfully maintain a breach of warranty

---

**9.** We need not decide at this time the exact parameters of the types of actions encompassed within "injuring personal property." *See, e.g., United States National Bank of Oregon v. Davies,* 274 Or. 663, 548 P.2d 966 (1976) (action for legal malpractice not an injury to personal property, as that statute contemplates some direct, physical injury to personal property); *Port of Portland v. Brady-Hamilton Stevedore Co.,* 62 Or.App. 92, 659 P.2d 995 (1983) (claim for loss, when brought by lessee of damaged personal property against the property's owner, governed by two-year Oregon catch-all statute of limitation, not by six-year provision for "injuring personal property").

**10.** *See Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (Ill.1982) (mere expectation that warranty attaching to sale of grain-storage tank, which stated that tank was "designed to withstand 60 lbs. per bushel grain and 100 mph winds," extended for life of tank, did not bring warranty within future performance exception).

**11.** The record does not contain the terms of this warranty extension.

action. Under AS 45.02.725, a party is not entitled to maintain an action for breach of warranty simply by bringing suit within four years of the termination of the warranty period. When a warranty extends to future performance, the cause of action accrues on the day the defect is or should have been discovered, *provided* this day is within the warranty period. *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 587 F.2d 813, 821 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); *Commissioners of Fire District No. 9, Iselin, Woodbridge, N.J. v. American La France*, 176 N.J.Super. 566, 424 A.2d 441, 444 (1980); *Christopher v. Larson Ford Sales*, 557 P.2d 1009, 1013 (Utah 1976). Here, the parties agreed that the warranty would expire in February, 1978, and the defect did not make its presence known until the time of the generator failure, nearly a year after the warranty had expired. Since no defect arose within the warranty period, no breach of warranty action can be maintained.

### C. Laches

The trial court also held that Kodiak Electric's suit against Westinghouse should be barred by laches. This holding must be reversed. The defense of laches is inapplicable to an action at law. Although this proposition has never been directly asserted by the court, this was our implicit conclusion in *State v. Alex*, 646 P.2d 203, 215 (Alaska 1982).[12] Moreover, limiting the defense of laches to equitable actions is in accord with the case law of virtually every other jurisdiction.[13] When a party is seeking to enforce a legal right, as opposed to invoking the discretionary equitable relief of the courts, the applicable statute of limitations should serve as the sole line of demarcation for the assertion of the right.[14]

For the foregoing reasons, the superior court's judgment is AFFIRMED in part, REVERSED in part, and REMANDED.

MATTHEWS and MOORE, JJ., not participating.

---

**12.** In *State v. Alex*, the court held that laches was inapplicable "[s]ince this is a general assumpsit common-law cause of action for the refund of taxes wrongly paid." Instead, the six year statute of AS 09.10.050(3) was held applicable. 646 P.2d at 215. In *Municipality of Anchorage v. Sisters of Providence in Washington, Inc.*, 628 P.2d 22, 34 (Alaska 1981), the court expressly declined to resolve whether laches was only applicable to equitable actions by refusing to determine whether plaintiff's action to recover specific funds was equitable or legal. In the other cases raising laches that have been considered by this court, the plaintiffs have sought equitable relief. *Pavlik v. State*, 637 P.2d 1045 (Alaska 1981) (action seeking to set aside land annexation); *Straight v. Hill*, 622 P.2d 425 (Alaska 1981) (action for reformation of deed); *Moore v. State*, 553 P.2d 8 (Alaska 1976) (action to set aside sale of leases); *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Bor-*

*ough*, 527 P.2d 447 (Alaska 1974) (action seeking dissolution of hospital service area).

**13.** *See Rinke v. Schuman*, 246 Ark. 976, 440 S.W.2d 765, 768 (1969); *County of Los Angeles v. City of Alhambra*, 27 Cal.3d 184, 191, 165 Cal. Rptr. 440, 447, 612 P.2d 24, 31 (1980); *Moore v. American Finance System*, 236 Ga. 610, 225 S.E.2d 17, 19 (1976); *Aronovitch v. Levy*, 56 N.W.2d 570, 573–74, 238 Minn. 237 (1953); *UAW-CIO Local #31 Credit Union v. Royal Insurance Co., Ltd.*, 594 S.W.2d 276, 281 (Mo. 1980); *First Citizens' National Bank v. MacAllister*, 117 N.H. 277, 371 A.2d 1175, 1176 (1977); 27 Am.Jur.2d *Equity* § 154 (1966). *But see Moore v. Phillips*, 6 Kan.App.2d 94, 627 P.2d 831, 835 (1981).

**14.** *See* Note, *Laches in Federal Substantive Law: Relation to Statutes of Limitation*, 56 B.U.L.Rev. 970, 970 & 974–75 (1976).