**LAW OFFICES OF STEVEN D. SMITH, P.C., Appellant,**

v.

**BORG–WARNER SECURITY CORP., formerly Borg–Warner Corp., and its Division Marvelschebler/Tillotson, Facet Aerospace Products Co., Purolator Products Co., formerly Facet Enterprises, Inc., all Delaware Corporations, Appellees.**

**No. S–8250.**

Supreme Court of Alaska.

Dec. 23, 1999.

---

Steven D. Smith, Law Offices of Steven D. Smith, P.C., and Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Bruce A. Bookman and Helena L. Hall, Perkins Coie, LLP, Anchorage, for Appellees.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

COMPTON, Justice.

## I. *INTRODUCTION*

This is the fourth appeal to arise from a 1986 airplane crash apparently caused by a defective carburetor made by Borg–Warner Security Corporation (Borg–Warner). The first two appeals concerned the superior court's 1989 dismissal, on statute-of-limitations grounds, of a wrongful-death suit against Borg–Warner.[1] Attorney Steven Smith, representing the estate of passenger Merrett Palmer, had filed the suit. Smith learned after the suit's dismissal that Borg–Warner had fraudulently concealed evidence of the allegedly defective carburetor. In 1994, after the estate's successful second appeal, the superior court held on remand that Borg–Warner's conduct excused the estate's lateness in filing suit. The estate eventually recovered five million dollars. Smith, however, was paid nothing. While its appeals were pending, the estate had terminated Smith's contingent-fee contract and sued him for malpractice. In settling that suit, Smith had waived any claim for attorney's fees based on his contingent-fee contract with the estate.

In 1994 Smith sued Borg–Warner for fraud and intentional interference with contract. The superior court dismissed his claims on the basis of the statute of limitations. Applying the two-year limitation period for torts, and the discovery rule, the court held that by the time Smith had lost his contingent-fee contract, been sued for malpractice, and learned of Borg–Warner's fraudulent concealment, he had discovered his potential claims against Borg–Warner. Unfortunately for Smith, that time was 1990.

Smith argues on appeal that he could not have sued until the superior court reinstated the estate's claim in 1994. He reasons that he had been collaterally estopped to argue, and/or had not yet discovered, that Borg–Warner's fraud, and not his own negligence, had been the legal cause of the estate's tardiness in filing suit. Smith also argues that the six-year statute of limitations for actions for injury to personal property governs his claims, not the two-year tort statute, because he seeks to recover economic losses. Finally, he claims that Borg–Warner's misconduct should estop it to plead or should equitably toll the statute of limitations. We affirm.

## II. *FACTS AND PROCEEDINGS*

### A. *Preface*

The complex history of this second-generation lawsuit is necessary to provide the context for the issues before us. It involves two streams of sometimes overlapping events, each of which has its own causal sequence. One is the Palmer estate's ultimately successful claim against Borg–Warner, including five key rulings by the superior court and this court from 1989 to 1994. The other is Smith's litigation with the estate and with Borg–Warner and its attorneys. We first recount the history of *Palmer v. Borg–Warner* from 1986 to 1994, and then return to 1986 and recount Smith's interactions with the estate, Borg–Warner, its counsel, and the courts, indicating the stage of and then-in-force holdings in *Palmer v. Borg–Warner.*

---

1. The third appeal is of little relevance to this   case.

B. *The Palmer v. Borg–Warner Litigation*

The following account, with alterations as noted in the margin,[2] is from this court's second *Palmer v. Borg–Warner Corp.*[3] opinion (*Palmer II*). We stress that Borg–Warner's fraudulent concealment was not, as in many such cases, a response to the underlying tort, i.e., the 1986 crash that killed Palmer. It instead consisted of Borg–Warner's 1981 deception of the Federal Aviation Administration (FAA) in order to conceal a manufacturing defect that later caused, *inter alia*, the 1986 crash.

On September 8, 1986, a Piper aircraft crashed in the Brooks Range. Kenneth Swanson, the pilot, and Merrett Palmer, his sole passenger, died in the accident. Palmer's widow was informed of her husband's death by September 11, 1986. On October 1, 1986, the aircraft's engine was removed from the scene of the crash and later transported to Fairbanks. The National Transportation Safety Board (NTSB) then began an investigation into the cause of the crash, issuing its findings in July 1987. (The NTSB controls access to aircraft wreckage from the time of a crash until its investigation is complete.) The NTSB's report found probable cause to believe that the crash had been caused by pilot error.

The report also noted that the "carburetor was intact and showed no signs of external damage other than heat damage" and that the "carburetor was equipped with a fibre composite float which was heavily damaged by the fire."

On July 30, 1987, the Palmer estate filed a wrongful-death action against the estate of Kenneth Swanson. In November the Swanson estate answered, asserting, *inter alia*, that (a) third parties were responsible for the accident; and (b) the Palmer estate had failed to join indispensable third parties. Neither the basis for the third par-

ties' liability nor the third parties were identified. On September 7, 1988, one day before the second anniversary of the crash, Swanson's estate filed a wrongful-death action against Borg–Warner, the carburetor manufacturer,[4] specifically alleging that a defective carburetor had caused the crash. [Swanson's attorneys had obtained evidence of Borg–Warner's concealment of the defect through discovery in an unrelated suit, and had not shared this finding with Smith.]

On September 19, 1988, the Palmer estate, after learning that the cause of the crash was more likely a defective carburetor float than pilot error, agreed to the dismissal of its suit against the Swanson estate. The Palmer estate filed suit against Borg–Warner the next day, two years and nine days after Palmer's widow had first learned of the accident.

Borg–Warner moved for summary judgment against the Palmer estate, arguing that the estate's suit for wrongful death was barred by the two-year statute of limitations provided in AS 09.10.070. The Palmer estate argued that, "[a]s of September 20, 1986, Plaintiffs did not know, nor could they have reasonably been expected to know, that the carburetor of the aircraft . . . may have been defective."

On March 14, 1989, the superior court granted summary judgment for Borg–Warner, ruling the claim time-barred as a matter of law. (Judge Hodges concluded that as of September 11, 1986, the Palmer estate had been obliged to investigate in *some* manner its potential claims for wrongful death.) An Order of Dismissal was entered against the Palmer estate, and the estate appealed. We affirmed the dismissal, ruling [in November 1990] that the estate's suit against Borg–Warner had been untimely filed. *Palmer v. Borg–Warner Corp.*, 818 P.2d 632, 636–37 (Alaska 1990) (*Palmer I*). Alleged fraudulent concealment of the cause of the crash

---

2. For clarity we have cut footnotes or moved their contents to in-text parentheticals, trimmed peripheral details, and made minor corrections without noting each change; we have also interpolated, in brackets, some additional material.

3. 838 P.2d 1243 (Alaska 1992).

4. The carburetors were manufactured by Borg–Warner's subsidiary, Marvel–Schebler/Tillotson. The Marvel–Schebler carburetor line was later purchased by Facet Enterprises, Inc. [*Palmer II*, 838 P.2d at 1245 n. 3.]

was not then an issue at either the trial or appellate level.

In February 1990, after a bench trial in the Swanson estate's suit, Judge Hodges issued a memorandum decision and findings of fact and conclusions of law. He found that:

> [T]he float in the carburetor of the Swanson aircraft absorbed fuel becoming heavy and sinking causing a sudden unexpected engine failure; the absorption of the fuel by the float was a result of a defect in the manufacturing process or a change in the structure of the float over time; the product was defective at the time it was manufactured or did not perform as a reasonable consumer would expect under normal use.

Judge Hodges held Facet Enterprises, Inc. [a Borg–Warner subsidiary], legally responsible for the death of Kenneth Swanson because of Facet's failure "to manufacture a carburetor and carburetor float that would perform in a manner that a reasonable consumer would expect." He also found by clear and convincing evidence that:

> Facet knew that some ... composite floats [had a manufacturing defect that led them to] absorb fuel and become "heavy"; that [Facet] knew [that] a heavy carburetor float ... could cause an unexpected loss of power while in flight; that although they suspected [that] the use of auto gas adversely affected the ... float, none of the tests conducted by them [had] substantiated this; that in spite of the lack of evidence, they published to the FAA, the engine manufacturer, and the public, as fact, that auto gas had an adverse effect on the ... float; [that it saved Facet money to convince the FAA to attribute the float problem to the use of auto gas, and not to a defect]; that Facet concealed from the consumers (the engine manufacturer, the airplane manufacturer, and the ultimate user) the fact that some floats in use had [manufacturing defects]; that this failure to disclose is outrageous conduct and [reflects] a reckless disregard of the rights of others entitling Swanson to an award of punitive damages.[5]

Borg–Warner settled with the Swanson estate prior to entry of final judgment. [This court later held, in Borg–Warner's suit for contribution against the makers of the engine, plane, and carburetor float, that Judge Hodges's findings collaterally estop Borg–Warner from relitigating whether it had outrageously and fraudulently concealed evidence, with reckless disregard for the rights of others.[6] Borg–Warner appropriately does not challenge that fact in this appeal.]

On April 23, 1990, the Palmer estate filed a Civil Rule 60(b) motion for relief from judgment. The Palmer estate argued that the finding in the Swanson estate's case that Borg–Warner had engaged in misconduct by concealing from the public the cause of carburetor failure, required that the earlier judgment dismissing the Palmer estate's case be vacated. Judge Hodges denied this motion without comment, findings or conclusions. The Palmer estate appeal[ed].

In *Palmer II,* this court considered the claim that Borg–Warner had fraudulently concealed the real reason that the carburetor tended to cause crashes, i.e., a defect, not the use of auto gas. It held that newly discovered evidence of such concealment could warrant relief from the judgment of dismissal under Alaska Civil Rule 60(b)(2). Once relieved from the dismissal, the estate then could argue that Borg–Warner's conduct equitably estopped it to plead the statute of limitations.[7]

This court focused in part on whether the Palmer estate could show the diligence required for equitable estoppel, i.e., that it had filed suit soon after it had "discovered or reasonably should have discovered the fact that evidence of a potential cause of action had been fraudulently concealed."[8] This court made two pertinent comments about the relationship between the estate's and Smith's negligence in investigating the cause of the crash, and Borg–Warner's deceit in

---

5. Alterations in findings ours.

6. *See Borg–Warner Corp. v. Avco Corp. (Lycoming Div.),* 850 P.2d 628, 634–36 (Alaska 1993).

7. *See Palmer II,* 838 P.2d at 1252.

8. *Id.* at 1251.

having, before the crash, concealed evidence that would have aided that investigation:

In *Palmer I,* we held that the statute of limitations began to run on the date the Palmer estate became aware of the crash because it "reasonably should have known from [that] date that potential claims existed against the pilot, the carrier, or the manufacturers." 818 P.2d at 634. This holding does not conflict with the rule that fraudulent concealment precludes a defendant from relying on the statu[t]e of limitations. Estoppel is "used as a means of preventing [a party] from taking an inequitable advantage of a predicament in which his [or her] own conduct had placed his [or her] adversary." Estoppel does not require that defendant's representation be the sole cause of plaintiff's predicament. It is enough that the representation influenced plaintiff's conduct.... [W]hen a defendant accomplishes his or her goal of deceiving the plaintiff, then it should not matter that the plaintiff is partly at fault for his or her predicament unless his or her conduct is utterly unreasonable.[9]

. . . .

In *Palmer I* we held that the Palmer estate had not exercised due diligence[,] and that a diligent inquiry would have revealed the elements of the Palmer estate's cause of action against Borg–Warner. However, if the Palmer estate is able to show fraud or intentional concealment of material facts on the part of Borg–Warner, the Palmer estate's failure to engage in a reasonable inquiry will be excused.[10]

*Palmer II* thus did not undermine *Palmer I*'s holding that the estate (and Smith) had not reasonably inquired into the cause of the crash, i.e., that they had been "partly at fault for [their] predicament." This court merely concluded that, if Borg–Warner had previously fraudulently concealed evidence, then that conduct would equitably estop Borg–Warner to plead the statute of limitations. This was so even if the estate had been

negligent, so long as it had not been "utterly unreasonable for the [estate] not to [have become] aware of the deception" before the limitation period had run.[11] This court remanded the case to the superior court to reconsider the estate's Rule 60(b)(2) motion.[12]

On remand, the superior court granted the estate's Rule 60(b)(2) motion in June 1994, vacating the summary judgment that had dismissed the estate's suit. The court found that, while "the attorneys for the Palmer Estate may have been negligent" in investigating the crash, "Borg–Warner's misrepresentations [had] substantially influenced the Palmer Estate's actions," and the estate had not been "utterly unreasonable" in failing to discover the concealment before the March 1989 summary judgment. The estate then recovered five million dollars from Borg–Warner.

### C. The Smith v. Borg–Warner Litigation

Palmer's estate entered into a contingent-fee contract with Smith in February 1987, five months after the crash. Smith filed the estate's untimely suit against Borg–Warner in September 1988. Borg–Warner's attorney suggested at oral argument on summary judgment that Smith could have found in the public record reason to sue Borg–Warner before the limitation period had run. The court granted summary judgment, and, in September 1989, while the estate's appeal was pending, the estate sued Smith for malpractice. In October 1989 Borg–Warner's attorney, David Hunter, of Lane, Powell & Barker, argued to this court in *Palmer I* that the estate's inability to investigate the plane and crash site during the NTSB investigation should not toll the statute under the discovery rule. He detailed the information available in FAA and other public records.

In February 1990 Judge Hodges found, in *Swanson v. Borg–Warner,* that Borg–Warner had fraudulently concealed from the FAA why its carburetors tend to cause

---

**9.** *See id.* at 1249 n. 9 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 105, at 733 (5th ed.1984) [hereinafter *Prosser & Keeton on Torts* ] and citing § 108, at 749).

**10.** *See id.* at 1251 n. 14.

**11.** *Id.* at 1251.

**12.** *See id.* at 1252.

crashes.[13] In April 1990 the estate terminated Smith's contingent-fee contract. Three weeks later Smith filed the estate's Rule 60(b) motion, based on the *Swanson* findings, which had alerted Smith to Borg–Warner's concealment. In July 1990 the court denied the motion, and the estate filed the *Palmer II* appeal.

In May 1992, after this court had held in *Palmer I* that "[t]he estate [had] failed to exercise 'reasonable diligence' when it neglected to promptly investigate the possibility of engine failure," [14] and while *Palmer II* was pending, Smith and the estate settled the malpractice claim.[15] In the agreement, Smith expressly waived any claim for fees under the contingent-fee contract.

This court issued *Palmer II,* and remanded the case, in November 1992. While the estate and Borg–Warner were litigating the estate's revived Rule 60(b) motion, Smith filed suit against Borg–Warner, Hunter, and Lane, Powell & Barker on May 18, 1994. Smith never served his original complaint. He has affined that, as of April or May 1994, he knew that the court would soon rule on the estate's Rule 60(b) motion, and that he did not intend to serve the complaint "unless or until [the court] reinstated Palmer's cause of action because [otherwise he] would have no economic loss." On June 10, 1994, the court granted the estate Rule 60(b) relief. In September 1994, Smith filed and served an amended complaint (and motion for extension of time for service).

Smith's amended complaint alleged that the defendants had, during the *Palmer* litigation, committed fraud and intentionally interfered with his contingent-fee contract by communicating to the estate that if Smith had diligently examined the public record, he could have timely seen the need to file the estate's suit against Borg–Warner. Smith claims that this was fraudulent because Borg–Warner and its attorneys had known, but not disclosed, that Borg–Warner had fraudulently distorted the public record.[16]

It is important to remember that Smith's suit, unlike the estate's efforts to obtain relief from the dismissal of *Palmer v. Borg–Warner,* is predicated on what he calls "Phase 2" of the fraud. "Phase 1" consists of Borg–Warner's efforts, in the years before the crash, to fraudulently conceal evidence in order to distort the public record about the fact that manufacturing defects, not the use of auto gas, made its carburetors fail.[17] That fraudulent concealment ultimately led the superior court to relieve the estate from the dismissal of its suit, and to equitably estop Borg–Warner from pleading the statute of limitations in that suit. The fraud that Smith claims harmed *him* is not the pre-accident fraudulent concealment, but Borg–Warner's alleged fraud in litigating *Palmer I* and *Palmer II* in 1989–91, i.e., in gaining the original dismissal, this court's affirmance, and the denial of the Rule 60(b) motion. The alleged Phase 2 fraud was to convince the court and the estate that Smith, not Borg–Warner, was to blame for the late filing because, had Smith investigated the public record, he would have timely realized the need to sue Borg–Warner. That argument allegedly constitutes fraud, and supports a piggybacked intentional interference with contract claim, because Borg–Warner knew that it had distorted the public record to hide evidence that would have led a reasonable attorney to sue Borg–Warner.

In April 1997 the court granted Borg–Warner and Lane, Powell & Barker sum-

---

**13.** No. 4FA–88–01553 CI, Memorandum Decision at 27–29, 34 (Alaska Super., February 6, 1990).

**14.** *Palmer I,* 818 P.2d at 634–35 n. 4.

**15.** Smith's attorney signed a copy of the agreement on May 4, 1992; Smith did so on May 13. He signed another copy, which still recited that it had been made on May 4, on May 20. Smith's malpractice insurer, however, apparently did not sign any copy until May 26.

**16.** Smith did not need to plead the fraud specifically. Nevertheless, his memoranda relied on Borg–Warner's attorneys' arguments in securing the dismissal in March 1989, in *Palmer I* in October 1989, in opposing the Rule 60(b) motion in May 1990, and in *Palmer II* in October 1991.

**17.** *See Palmer II,* 838 P.2d at 1246.

mary judgment on the ground that Smith had not filed his suit within the applicable two-year tort period of limitation. The court reasoned that by April 1990, Smith had known of the acts giving rise to, and had suffered most of the injuries underlying his claim. The court denied Smith's motion to reconsider and entered a final judgment in July 1997. Smith appeals.

## III. DISCUSSION

### A. Summary of Issues and Standards of Review

This court reviews summary judgments de novo. Where there is no genuine dispute of material fact, this court will affirm if the undisputed facts entitle the movant to judgment as a matter of law.[18] This court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in his or her favor.[19]

At least one issue, whether the six- or two-year statute of limitations governs Smith's claims, poses a general question of law[20] that this court reviews de novo, adopting the rule that best reflects precedent, reason, and policy.[21] Smith notes that other issues in the case "require factual determinations."[22] Some of his claims about standards of review for various issues are debatable. But this case was dismissed on summary judgment, and so this court's review of the dismissal as it relates to various issues does not depend on whether the issues are factual or legal. Even if some of them are factual, and so would be reviewed for clear error in a post-trial appeal, this court must in reviewing a summary judgment determine whether, on the undisputed facts viewed in the light most favorable to Smith, Borg–Warner was entitled to judgment as a matter of law.

### B. Could Smith Have Filed Suit Before the June 1994 Ruling that Reinstated the Estate's Claim Against Borg–Warner?

Smith makes two related arguments that both turn on the premise that he timely filed his suit because he could not have done so before the superior court had reinstated the estate's claim against Borg–Warner in June 1994. Smith argues that the grant of Rule 60(b) relief removed the bar of past judgments which held, as he reads them, that his negligence, and not Borg–Warner's fraud, had caused the estate to file suit late. He argues in terms of issue preclusion that he "could not ignore the prior adjudication[s]" to that effect, and, in terms of the discovery rule, that he "could not have known the causal element [of his claims] before the prior adjudications were reversed."

### 1. Smith's discovery-rule argument is inadequately briefed.

Smith argues that (1) "a cause of action does not accrue until the plaintiff discovers or reasonably should discover the existence of all of the elements of his cause of action";[23] (2) one element of his cause of action is proximate cause, i.e., that Borg–Warner's conduct was the legal cause of the injury or damages suffered; and (3) the reinstatement of the estate's cause of action "supplied the necessary element of a [proximate] causal connection between the conduct of Borg–Warner/Facet and Smith's damages and eliminated Smith as the sole cause."

Because Smith has failed to adequately brief an argument for his novel proposition, we decline to consider it.

---

**18.** See, e.g., Metcalfe Invs., Inc. v. Garrison, 919 P.2d 1356, 1360 (Alaska 1996).

**19.** See id.

**20.** See Jenkins v. Daniels, 751 P.2d 19, 21 (Alaska 1988).

**21.** See Todd v. State, 917 P.2d 674, 677 (Alaska 1996).

**22.** Smith argues that the court's application of the discovery rule, and its refusal to apply equitable estoppel or tolling, entail factual determinations. He argues that whether Borg–Warner should be quasi-estopped to assert the statute of limitations is a question of law.

**23.** Misquoting though accurately paraphrasing Cameron v. State, 822 P.2d 1362, 1366 (Alaska 1991).

2. *Was Smith collaterally estopped to argue that Borg–Warner's fraud had harmed him until the court relieved the estate from dismissal?*

We find unpersuasive Smith's suggestion that, in the early 1990s, he thought that he was estopped from suing Borg–Warner for intentional torts because of what he perceived as a prior finding that he had been negligent. While we accept the portion of Smith's characterization of the prior final judgments that concerns his "negligence," we do not accept his claim that the dismissal of the estate's suit was based on merely his fault and not Borg–Warner's. Borg–Warner's fraudulent concealment and alleged secondary fraud in *Palmer* were not at issue below or on appeal in *Palmer I*.[24] Smith concedes that the superior court denied the estate's 1990 Rule 60(b) motion without comment, and so the issue of the relative effect of his negligence and Borg–Warner's fraudulent concealment was not even arguably "decided." Moreover, Judge Hodges's dismissal of the Rule 60(b) motion, even had it arguably "decided" the issue of Smith's alleged negligence, would not have barred him from suing Borg–Warner on his own behalf at the same time as he filed the estate's Rule 60(b) motion.

■ Smith's only plausible argument is that he was collaterally estopped from relitigating his negligence in comparison to Borg–Warner's alleged fraud. However, it is unlikely that his negligence would have prevented him from recovering from Borg–Warner for fraud. "The clearly prevailing view is that comparative negligence principles are not applicable to intentional torts.... Before comparative negligence was widely adopted, it was black-letter law that contributory negligence principles were not a de-

fense to an intentional tort action. And under comparative negligence, this ... carried over and became the general rule[.]"[25] In fact, this court noted in *Palmer II* that a plaintiff's "mere negligence" cannot bar its attempt to equitably estop a fraudulent defendant because "such a standard would be 'clearly inconsistent with the general rule that mere negligence of the plaintiff is not a defense to an intentional tort.' "[26]

Finally, we note that it seems very dubious as a matter of policy to let litigants who erroneously believe their suits are barred by collateral estoppel to argue that the statute of limitations is tolled until they believe or reasonably should believe that the estoppel has been removed. Borg–Warner is right that *Shaw v. State, Department of Administration*,[27] which Smith cites to support his proposition, is not a collateral-estoppel case.

■ We conclude that a party arguing that the statute of limitations should be tolled because of collateral estoppel must show that the estoppel bar made suit futile by clear and convincing evidence. In Smith's case, the likelihood of Borg–Warner's success in using collateral estoppel to bar his claim was far too remote to excuse Smith from attempting to file suit.

C. *Should the Two- or Six–Year Statute of Limitations Govern Smith's Claims for Economic Losses Caused by Fraud and Intentional Interference with Contract?*

■ At all times pertinent to this appeal, Alaska had a six-year statute of limitations, AS 09.10.050, covering actions "upon a contract or liability, express or implied" or "for waste or trespass upon real property" or "for taking, detaining, or injuring personal property."[28] It also had a two-year statute of

---

24. *See Palmer II*, 838 P.2d at 1245 & n. 5.

25. Allan L. Schwartz, Annotation, *Applicability of Comparative Negligence Principles to Intentional Torts*, 18 A.L.R. 5th 525, 525 (1995); *see also Reichert v. Atler*, 117 N.M. 628, 875 P.2d 384, 389–90 (N.M.App.1992) (summarizing development of law and collecting authorities).

26. *Palmer II*, 838 P.2d at 1251 (quoting *Prosser & Keeton on Torts* § 108, at 750).

27. 816 P.2d 1358 (Alaska 1991).

28. At the time this lawsuit was filed, AS 09.10.050 provided:

Unless the action is commenced within six years, a person may not bring an action

(1) upon a contract or liability, express or implied, excepting those mentioned in AS 09.10.040;

(2) for waste or trespass upon real property; or

limitations, AS 09.10.070, "for any injury to the person or rights of another not arising on contract and not specifically provided otherwise."[29]

Smith argues that the superior court should have applied the six-year statute to his claims for economic loss. He bases this argument on the text of AS 09.10.070(a)(1) and AS 09.10.050(3), and on two cases, *Lee Houston and Associates v. Racine*[30] and *Breck v. Moore.*[31]

Smith argues that the loss caused by the cancellation of his contingent-fee contract is the loss of a right arising from contract and is therefore excluded from AS 09.10.070(a)(1) which refers to an action for any injury to the rights of another "not arising on contract." Further, he argues that the loss of his contingent-fee contract is a personal property right and is thus specifically covered by AS 09.10.050(3) which refers to an action "injuring personal property."

■ Smith's argument concerning the phrase "not arising from contract" contained in AS 09.10.070 is linguistically possible. His contention is that the phrase modifies "rights of another." But we believe that the phrase modifies "an *action*" for injury to rights of another rather than "rights of another." We reach this conclusion for two reasons.

First, distinguishing economic losses arising from the loss of existing contracts from those economic losses which arise from lost economic opportunities, as Smith argues, would serve little purpose. Such a distinction implies that the tort of intentional interference with contractual relations is governed by the six-year statute, while the closely related tort of intentional interference with prospective economic advantage is governed by the two-year statute. It is difficult to think of any reason why the legislature would have intended such a result.

Second, reading the phrase "not arising from contract" to modify "an action" suggests that AS 09.10.070 distinguishes contract from non-contract actions. Such a reading is consistent with the fact that contract actions are expressly covered under the six-year statute. Thus AS 09.10.070 reinforces the legislative intent expressed in AS 09.10.050(1) that contract actions are governed by the six-year statute.

■ Smith's textual argument concerning AS 09.10.050 interprets the term "personal property" used in the phrase "for taking, detaining, or injuring personal property" to include economic loss. We reject this interpretation and believe that "personal property" as used in AS 09.10.050(3) refers to tangible property. We stated in *Kodiak Electric Association v. DeLaval Turbine, Inc.*[32] "that the phrase 'injuring personal property' incorporates actions for injury to tangible personal property." In so doing, we noted that we need not decide "the exact parameters of the types of actions encompassed within 'injuring personal property.' "[33] Subsequent to *DeLaval* we have decided a number of tort cases—as distinct from cases which might be said to arise either in tort or in contract—involving economic loss, and have not held that economic loss was encompassed within the "injuring personal property" language of AS 09.10.050(3).[34]

Smith's argument based on *Lee Houston* and *Breck* is also unavailing. In those cases we held that claims arising out of professional service relationships which involved economic loss were governed by the six-year rather than the two-year statute. We noted

(3) for taking, detaining, or injuring personal property, including an action for its specific recovery.

**29.** At the time this lawsuit was filed, AS 09.10.070(a)(1) provided:
A person may not bring an action (1) for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not specifically provided otherwise ... unless the action is commenced within two years.

**30.** 806 P.2d 848 (Alaska 1991).

**31.** 910 P.2d 599 (Alaska 1996).

**32.** 694 P.2d 150, 156 (Alaska 1984).

**33.** *Id.* at n. 9.

**34.** *See, e.g., Hayes v. A.J. Associates,* 960 P.2d 556, 572 (Alaska 1998); *Alaska Tae Woong Venture v. Westward Seafoods,* 963 P.2d 1055, 1065 (Alaska 1998).

that such claims might reasonably be said to arise either in tort or in contract [35] and that in such circumstances the longer limitations period should be chosen.[36] In the present case, there was no contractual relationship between Smith and Borg–Warner and thus no grounds exist for contending that Smith's claim is one based on an express or implied contractual obligation.

In his reply brief, Smith relies on *McDowell v. State*,[37] in which we held that AS 09.10.050(2) applied to a claim for underground contamination of the plaintiff's real property by petroleum products. This holding has no important bearing on the present controversy as the *McDowell* claim concerned statutory "trespass upon real property."[38]

Because the economic losses do not constitute "an action ... arising on contract" for an injury to Smith's rights, we conclude that the two-year statute of limitations governs Smith's claims for economic loss.

D. *Borg–Warner's Litigation Conduct Should Not Estop It from Asserting or Equitably Tolling the Statute of Limitations.*

Smith's equitable arguments are plainly without merit.

1. *Equitable estoppel*

■ Borg–Warner correctly states that "Smith's equitable estoppel argument is a red herring." For a plaintiff to equitably estop a defendant from pleading the statute of limitations, the plaintiff must show that he or she relied on the defendant's fraud by either consciously relying on an affirmative misrepresentation,[39] or failing to discover fraudulently concealed evidence.[40]

■ The estate's success in estopping Borg–Warner from pleading the statute of limitations against it involved the latter sort of fraud. Therefore, the estate had only to show that its ignorance of the deception and its failure to discover "that evidence of a potential cause of action had been fraudulently concealed" were not "utterly unreasonable."[41] This court noted in *Palmer II* that, when a party successfully fraudulently conceals facts, "the defrauded party's response is inaction ... [not] 'reliance' in the sense of a conscious change of position."[42] The defrauded party is "ignorant of the concealment itself and will not act due to [that] ignorance."[43]

Smith can show neither type of "reliance." He cannot show ignorant inaction resulting from Borg–Warner's initial fraudulent concealment, for he has affined that he "learned of the intentional withholding/misrepresentation of Facet" by April 23, 1990. He remained inactive, but not ignorant.

Nor can Smith show conscious, reasonable reliance on Borg–Warner's statements in *Palmer I* because their falsity was manifest by April 1990. Smith alleges that Borg–Warner falsely blamed him in *Palmer I* when it implied that he could have timely determined that the estate should sue Borg–Warner if he had made reasonable efforts to examine the record. Furthermore, Smith claims that he could not have discovered this false blame because Borg–Warner never owned up to fraudulently concealing evidence that should have been in the public record. No court has ruled on whether Smith could have unearthed Borg–Warner's fraud, but in April 1990 Smith himself filed a 60(b) motion on behalf of the Palmer estate seeking relief from judgment on the grounds that Borg–Warner had engaged in misconduct by concealing the cause of carburetor failure.

**35.** *See Lee Houston*, 806 P.2d at 853–54.

**36.** *Id.* at 855.

**37.** 957 P.2d 965 (Alaska 1998).

**38.** *Id.* at 966.

**39.** *See, e.g., Gudenau & Co., Inc. v. Sweeney Ins., Inc.*, 736 P.2d 763, 769 (Alaska 1987).

**40.** *See Palmer II*, 838 P.2d at 1249; *see also Pedersen v. Zielski*, 822 P.2d 903, 909 (Alaska 1991) ("An affirmative misrepresentation is not always necessary to establish estoppel.").

**41.** *Palmer II*, 838 P.2d at 1251.

**42.** *Id.* at 1249.

**43.** *Id.*

From then on, Smith could not rely on Borg–Warner's representation that he could have known to sue Borg–Warner before the statute of limitations had run.[44] From then on, whether Smith or Borg–Warner caused the late filing in *Palmer I* was an open question, one that Smith could have litigated.

Smith argues that despite his knowledge of the fraudulent concealment in 1990, he had no means to "conduct discovery and gather evidence on the issue" of which party's conduct had caused Palmer's case to be filed late until after Palmer's remand in September 1992. We disagree. He could have had "a vehicle by which to conduct discovery" had he filed a timely suit on his own behalf. His argument all but admits that he was using the estate's Rule 60(b) litigation as a dry run for his own suit. Smith's argument that he "relied upon the court's acceptance of Borg–Warner/Facet's fraudulent misrepresentation as to the nature of the public record" is irrelevant to the question whether *he* relied upon the misrepresentation, which he plainly did not.

### 2. *Related arguments not made below*

Neither Smith nor the trial court addressed the issues of quasi-estoppel or equitable tolling in the proceeding below. Smith does not argue on appeal why this court should do so, though the issues may well be sufficiently related to his equitable estoppel argument that this court could review them.[45] Borg–Warner, moreover, has responded briefly to the very limited merits of Smith's points, rather than noting his waiver. Nonetheless, we decline to address them.

## IV. CONCLUSION

The judgment of the superior court is AFFIRMED.

**44.** One cannot reasonably rely on a known misrepresentation. *See Sharrow v. Archer,* 658 P.2d 1331, 1334 (Alaska 1983).

**45.** *See Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 115 (Alaska 1990) (holding that this court will review arguments not made below if they concern issues that are "1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings") (citations and quotations omitted).