John L. SMALLWOOD, Appellant/Cross–Appellee,

v.

CENTRAL PENINSULA GENERAL HOSPITAL, Appellee/Cross–Appellant.

Nos. S–11585, S–11406.

Supreme Court of Alaska.

Nov. 17, 2006.

320

Nikole Nelson, Alaska Legal Services Corporation, Anchorage, for Appellant/Cross–Appellee.

Robert J. Molloy, Kenai, and Kristine A. Schmidt, Kenai, for Appellee/Cross–Appellant.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The main question here is whether John L. Smallwood, a Medicaid recipient treated at Central Peninsula General Hospital, can sue the hospital to enforce Medicaid billing standards, particularly the "balance billing" prohibition that prevents billing for amounts (apart from authorized copayments) exceeding those reimbursable under Medicaid. We conclude that Smallwood is a third-party beneficiary of the provider agreement between

the hospital and the state; he can therefore sue to enforce the balance billing prohibition. We also conclude that he has a viable Unfair Trade Practices Act claim. And we conclude that the hospital's counterclaim for unpaid services is not time-barred. We therefore affirm some of the superior court's rulings and vacate others.

## II. FACTS AND PROCEEDINGS

John L. Smallwood is a Medicaid recipient who receives medical care from Central Peninsula General Hospital. The hospital is operated by Central Peninsula General Hospital, Inc., a nonprofit Alaska corporation. The hospital provides medical care to Medicaid recipients under a "provider agreement" with the State of Alaska.[1] The state, through its contractor, First Health Services Corporation (First Health), reimburses providers like the hospital for some of the costs of the services provided to Medicaid recipients.[2]

Smallwood received medical services and supplies at the hospital on multiple occasions between September 1998 and April 2000. As of January 2004 Smallwood continued to receive services from the hospital. Smallwood is expected to need frequent medical care from the hospital in the future.

The hospital sent Smallwood bills with a statement of balances due on his hospital accounts. Those balances totaled $743.46. The balances included both First Health-approved copay amounts and unauthorized charges. Smallwood did not pay the balances. In February 2001 the hospital assigned its claim for debt on Smallwood's accounts to Alaska Financial Services, Inc. (AFS). AFS filed a small claims action against Smallwood on May 3, 2001.

After being informed of the small claims action, Smallwood, through counsel, notified the hospital that he believed the hospital was "balance billing" him in violation of state and federal law. Smallwood also alleged that because the charges were not itemized, he could not "ascertain whether the charges [were] legitimate and whether or not they [were] payable under Medicaid."

In December 2001, while the small claims action was pending, Smallwood sued the hospital and AFS. Smallwood's complaint alleged that the hospital had violated state and federal law and breached its provider agreement with the state by charging inappropriate cost-sharing amounts to Medicaid recipients. His complaint also alleged that the hospital's billing practices violated the Alaska Unfair Trade Practices Act (UTPA). It also asserted procedural due process claims under the federal and state constitutions. Smallwood's complaint requested: (1) a declaratory judgment holding that the hospital's billing practices violated state and federal Medicaid law, the UTPA, and the Alaska and United States Constitutions; (2) an order enjoining the hospital from overcharging Medicaid recipients and using a billing method that creates confusion and misunderstanding; (3) an order enjoining AFS from further attempts to collect Smallwood's debt; and (4) damages.

After Smallwood filed suit, Smallwood and AFS agreed to dismiss AFS's small claims action. On or about March 8, 2002 AFS assigned its claim back to the hospital. The district court dismissed the small claims action on March 18, 2002.

The hospital answered Smallwood's complaint, denying Smallwood's claims, and counterclaimed for the unpaid balance on Smallwood's hospital account. The hospital's counterclaim adjusted the hospital's calculation of the balance due, reducing it from $743.46 to $483.63.[3] Both parties moved for summary judgment. The superior court denied both parties' motions.

Superior Court Judge Charles T. Huguelet presided over a bench trial in January 2004.

1. *See* 7 Alaska *Administrative Code* (AAC) 43.065 (2004).

2. *See* 7 AAC 43.040(b).

3. An audit by hospital employees during this period revealed that the hospital had overbilled Smallwood $259.83. The superior court explained that the overcharges were caused by a number of factors: hospital employees' use of incorrect revenue codes for supplies and services billed to Medicaid, failure of the hospital to ask for reimbursement from Medicaid within applicable time limits, and a computerized billing system that treated Medicaid recipients like patients with private insurance. The superior court found that the overcharges were not deliberate.

At trial, Smallwood asked the court to order the hospital to change its billing statement format to include itemization or notices of the authorized copayments to ensure that Medicaid recipients not be billed in excess of the authorized copayments in the future. In its February 2004 memorandum decision and order, the superior court found Smallwood liable for the authorized copayments, but enjoined the hospital from overcharging Smallwood in the future. As to Smallwood's specific claims, the superior court first denied Smallwood relief under the UTPA, reasoning that balance billing is already prohibited under state and federal Medicaid law. Next, the court denied Smallwood's request that the hospital be required to modify its billing procedures because the court thought it "doubtful" that Smallwood has a private right of action for such a claim. The court also thought it "doubtful" that the hospital had violated Smallwood's procedural due process rights. The court did not address Smallwood's statute of limitations defense and did not decide Smallwood's claims for declaratory relief.

The superior court noted that the hospital changed its computerized billing system twice after Smallwood was overcharged. It also noted that the hospital admitted that its system will continue to automatically bill Medicaid recipients for charges rejected by the state.

In February 2004 the superior court entered judgment for the hospital and against Smallwood for the $483.63 in charges authorized by First Health. The court also ordered the hospital to "ensure that its invoices to Mr. Smallwood do not exceed the Medicaid authorized copays as designated by First Health."

On March 18, 2004 the hospital filed proposed final judgments in the superior court. On the same day, Smallwood filed this appeal. After the parties disagreed about whether the superior court had issued a final

judgment, we issued an order holding the appeal in abeyance until a final judgment was entered. In June 2004 the superior court entered a separate final judgment that (1) awarded the hospital $585.06 ($483.63 plus five percent annual interest) against Smallwood; (2) denied Smallwood's request for injunctive and declaratory relief; (3) renewed its prior order that the hospital ensure that its future invoices to Smallwood not exceed the Medicaid-authorized copayments; and (4) concluded that neither party had prevailed on the issues of injunctive and declaratory relief. In a subsequent order, the superior court awarded the hospital attorney's fees of $96.73 against Smallwood.

Smallwood appeals, arguing that he, as a Medicaid recipient, has a private right of action to sue Medicaid providers for overbilling him. He maintains that the superior court should have ordered the hospital to change its billing practices so that it would no longer overcharge Medicaid recipients. He argues that the superior court erred in rejecting his UTPA claim. And he renews his statute of limitations defense to the hospital's counterclaim.[4]

The hospital cross-appeals, arguing that the superior court erred by refusing to declare that Smallwood has no private right of action to enforce the balance billing prohibition in the Medicaid laws. The hospital also argues that it was error not to declare one of the parties the prevailing party and that its attorney's fee award was too small.

## III. DISCUSSION

### A. Standard of Review

■ We review a trial court's denial of injunctive and declaratory relief for abuse of discretion,[5] but apply our independent judgment to those aspects of its ruling that involve questions of law.[6]

■ A trial court's determination regarding the applicable statute of limitations resolves a question of law that we review de

---

4. Smallwood argues that part of the hospital's counterclaim is time-barred but does not otherwise challenge the amount of the counterclaim.

5. *See Lowell v. Hayes*, 117 P.3d 745, 750 (Alaska 2005) (declaratory relief); *N. Kenai Peninsula Rd. Maint. Serv. Area v. Kenai Peninsula Borough,*

850 P.2d 636, 639 (Alaska 1993) (injunctive relief).

6. *See Alderman v. Iditarod Props., Inc.,* 32 P.3d 373, 380 (Alaska 2001); *Alaska Marine Pilots v. Hendsch,* 950 P.2d 98, 104 (Alaska 1997).

novo.[7] But a determination regarding the dates applicable to a statute of limitations issue may turn on factual findings, which we review for clear error.[8]

## B. Federal and State Medicaid Program

The Medicaid program, codified at Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is a voluntary federal-state partnership through which the federal government gives participating states funds to assist them in providing health care to eligible needy individuals.[9] Participating states must comply with the statutory provisions of the Medicaid act as well as regulations promulgated by the Secretary of Health and Human Services.[10] Alaska participates in the Medicaid program.[11] The Department of Health and Social Services (DHSS) administers the program in Alaska.[12]

DHSS contracts with health care providers for Medicaid services.[13] Under these "provider agreements," providers agree to furnish medical care to eligible individuals in exchange for reimbursement from the state.[14] Even though the Medicaid rates for services are often lower than a provider's typical fees, providers must accept the state-approved Medicaid payment as payment in full for the services rendered.[15] The only exception is that providers may charge recipients authorized "cost-sharing" including co-payment amounts.[16] The prohibition on charging a recipient for any amount exceeding the authorized cost-sharing charges is commonly referred to as the prohibition against "balance billing." [17]

A provider may not deny services to an eligible individual based on the individual's inability to pay the copayment.[18] But an individual's inability to pay does not eliminate his liability for copayment charges.[19]

DHSS has contracted with First Health to process Medicaid claims. First Health reviews charges submitted by medical providers and determines how much Medicaid will pay for the services rendered. After First Health makes its determination, it gives the provider a "remittance advice" that lists the approved payment amount, any denials, and any copay amount that the provider may charge the Medicaid recipient. The state does not provide the Medicaid recipient with a copy of the remittance advice. The bills Smallwood received from the hospital did not list First Health-approved copay amounts.

## C. Smallwood Has a Private Right of Action To Enforce the Balance Billing Prohibition.

■ Although it did not decide whether Smallwood has a private right of action to

7. *Sengupta v. Wickwire,* 124 P.3d 748, 752 (Alaska 2005); *Alderman v. Iditarod Props., Inc. (Alderman II* ), 104 P.3d 136, 140 (Alaska 2004).

8. *See Sengupta,* 124 P.3d at 752; *Alderman II,* 104 P.3d at 140.

9. *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.,* 424 F.3d 931, 934–35 (9th Cir.2005) (citing *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)); *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance,* 63 P.3d 264, 268 (Alaska 2003).

10. *Ctrs. for Medicare & Medicaid Servs.,* 424 F.3d at 935 (citing *Wilder,* 496 U.S. at 502, 110 S.Ct. 2510); *Garner,* 63 P.3d at 268.

11. AS 47.07.010 *et seq.*

12. AS 47.07.040.

13. 7 AAC 43.040, .065 (2004 & Supp.2006).

14. 7 AAC 43.065 (2004); *see* Social Security Act § 1902, 42 U.S.C. § 1396a(a)(27) (2000).

15. *See Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust,* 410 F.3d 304, 313 (6th Cir.2005); 42 C.F.R. § 447.15 (2005) ("A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."); 7 AAC 43.050 ("Payment provided by the division will be reduced by the amount of cost-sharing required under 7 AAC 43.052, and represents full and total reimbursement from the division for those covered services authorized under Medicaid.").

16. 42 C.F.R. § 447.15; 7 AAC 43.050, .052.

17. *Spectrum Health,* 410 F.3d at 314; *see also Mallo v. Public Health Trust of Dade County, Fla.,* 88 F.Supp.2d 1376, 1377 (S.D.Fla.2000).

18. AS 47.07.042(a).

19. 42 U.S.C. § 1396b(a); AS 47.07.042(a).

enforce the balance billing prohibition, the superior court stated that it is "doubtful" Smallwood has such a right of action. We consider here whether, as Smallwood argues, he has a private right of action to affirmatively enforce the balance billing prohibition.

The pertinent federal and state statutory provisions do not explicitly create private rights of action.[20] Smallwood nonetheless maintains that he has a private right of action to enforce the balance billing prohibition (a) under the federal Medicaid act, (b) under the state Medicaid act, and (c) as a third-party beneficiary of the hospital's provider agreement with the state. The hospital disagrees with Smallwood's interpretation of the jurisprudence surrounding implied rights of action and enforcement of contracts by third-party beneficiaries. It contends that it would be inappropriate for us to create a right of action in this situation because compliance with the applicable statutes and provider agreement is better enforced by the responsible federal and state agencies, not through "ad hoc" litigation against provider hospitals.

Smallwood gives us no reason to think that his right to relief or the extent of any relief depends on the source of the private right of action. We therefore assume, without deciding, that Smallwood could obtain the same relief regardless of whether his right of action arises under federal law, state law, or the provider agreement. Because we conclude that Smallwood has a right of action as a third-party beneficiary of the provider agreement between the hospital and the state, we do not need to decide whether there may be other viable state or federal bases for a right of action.

### 1. Smallwood has a right of action as a third-party beneficiary of the hospital's provider agreement.

We will recognize a third-party right to enforce a contract upon a showing that the parties to the contract intended that at least one purpose of the contract was to benefit the third party.[21] In some of our cases, we have focused on whether the promisee intended to benefit the third party.[22] But in other cases we have not differentiated between the intent of the promisor and promisee.[23] We now conclude that in third-party beneficiary cases we should follow the approach of the Restatement (Second) of Contracts to the extent it focuses on the intent of the promisee.[24]

We have also never addressed whether we only need to find an intent to benefit the third party, or whether we must also find an intent to allow the third party to enforce the contract. Our cases focus only on the intent to benefit the third party.[25] But the Restatement (Second) of Contracts highlights both aspects of the contracting parties' intentions. Section 302 of the Restatement provides:

(1) Unless otherwise agreed between promisor and promisee, *a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties* and either

 (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

---

**20.** *See* 42 U.S.C. § 1396 *et seq.;* AS 47.07.010 *et seq.; see also Mallo,* 88 F.Supp.2d at 1378 (noting that there is no explicit right of action for Medicaid beneficiaries to sue providers for balance billing in federal Medicaid legislation).

**21.** *Howell v. Ketchikan Pulp Co.,* 943 P.2d 1205, 1207 (Alaska 1997); *Neal & Co. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.,* 895 P.2d 497, 505 (Alaska 1995); *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.,* 694 P.2d 150, 154 (Alaska 1984); *State v. Osborne,* 607 P.2d 369, 371 (Alaska 1980).

**22.** *Kodiak Elec.,* 694 P.2d at 154; *Osborne,* 607 P.2d at 371 ("Ordinarily, only the promisee's ... motives are relevant.").

**23.** *Howell,* 943 P.2d at 1207–08 ("The motives of the parties, including those of the promisee, are determinative."); *Neal,* 895 P.2d at 505; *see also Holbrook v. Pitt,* 643 F.2d 1261, 1271 n. 17 (7th Cir.1981) (rejecting position that only intentions of promisee are relevant to determination of third-party beneficiary's rights).

**24.** *See* RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981).

**25.** *See Howell,* 943 P.2d at 1207; *Neal,* 895 P.2d at 505; *Kodiak Elec.,* 694 P.2d at 154; *Osborne,* 607 P.2d at 371.

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.[26]

The parties do not address this subtlety in their briefing. We therefore assume here, without deciding, that if the state, as promisee, manifested an intention to benefit Medicaid recipients like Smallwood, it also manifested an intention that Medicaid recipients, as third-party beneficiaries, be able to enforce the provider agreement.

Finally, government contracts may present particularly difficult third-party beneficiary problems.[27] For example, government contracts create the risk of imposing liability that is disproportionately burdensome in relation to the benefit received.[28] The Restatement addresses this potential problem by providing an exception for private actors who contract with the government; those contractors are not subject to liability for consequential damages resulting from their performance or failure to perform.[29] But because Smallwood does not claim consequential damages, that exception is inapplicable here.

By entering into a provider agreement with the state, the hospital promised not to balance bill Medicaid recipients. The state is the promisee of that agreement.

The language of the provider agreement and the applicable state and federal Medicaid laws indicate that the state intended that Medicaid recipients like Smallwood benefit from providers' promises not to balance bill. The standard provider agreement states that providers must comply with federal and state Medicaid regulations and must "accept as payment in full the amounts paid in accordance with Alaska statutes ... and make no additional charge to the recipient.... For other services requiring recipient cost sharing, the provider shall collect from the recipient the amount of cost sharing in compliance with the [Alaska regulations]."[30] DHSS regulations require that recipients "not be charged for any additional difference between the amount billed and the amount received in payment from the division for those covered services provided."[31] The applicable federal regulations require that all state plans "must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual."[32] Even when a third party is liable for the recipient's medical costs, the federal statute prohibits providers from collecting any balance remaining from the recipient or the third party.[33] Moreover, Medicaid legislation has been enacted to provide medical care to needy persons. As we explained in *State v. Planned Parenthood of Alaska, Inc.*, the "Medicaid program's purpose" is "granting uniform and high quality medical care to all needy persons of this state."[34]

**26.** RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981) (emphasis added).

**27.** *See* Melvin Aron Eisenberg, *Third-Party Beneficiaries*, 92 COLUM L.REV 1358, 1406–12 (1992).

**28.** *See id.* at 1407; *see also Zigas v.Super. Ct.*, 120 Cal.App.3d 827, 174 Cal.Rptr. 806, 811 n. 3 (1981).

**29.** RESTATEMENT (SECOND) OF CONTRACTS § 313 (1981).

**30.** *See also* 7 AAC 43.065(b) ("Providing medical or medically-related services to recipients or billing the division for those services constitutes agreement by the provider ... (2) to comply with applicable state and federal Medicaid law.").

**31.** 7 AAC 43.050.

**32.** 42 C.F.R. § 447.15.

**33.** 42 U.S.C. § 1396a(a)(25)(C).

**34.** *State, Dep't of Health & Soc. Servs. v. Planned Parenthood of Alaska, Inc.*, 28 P.3d 904, 911 (Alaska 2001); *see also* AS 47.07.010 ("It is declared by the legislature as a matter of public concern that the needy persons of this state ... should seek only uniform and high quality care that is appropriate to their condition and cost-effective to the state and receive that care, regardless of race, age, national origin, or economic standing."); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 313 (6th Cir.2005) (stating that "Congress established Medicaid ... to provide medical care to low-income families and individuals").

At least one federal court has held that Medicaid recipients are the intended beneficiaries of the prohibition on balance billing. In *Mallo v. Public Health Trust of Dade County,* the court concluded that the structure of 42 U.S.C. § 1396a(a)(25)(C) "creates a third-party beneficiary contractual obligation on the part of the health care provider to collect from the Medicaid patient no more than the amount of the Medicaid payment."[35] The court explained:

> Capping the amount of money providers can collect, the balance billing provision's mandatory language creates the terms of a third-party beneficiary contract to protect the financial interests of indigent Medicaid patients. The Court finds Plaintiff, as a Medicaid recipient, is the intended, third-party beneficiary to the contract established by § 1396a(a)(25)(C), in which (a) the federal government promises Medicaid money to the State in exchange for which the State will provide medical care for the poor; (b) private and public health care providers have promised the State to provide medical care for indigent patients, in exchange for which the State will reimburse the provider with Medicaid funds; and (c) the State will disburse Medicaid funds at an amount it sets, in exchange for which the health care provider will not charge the patient more than the amount of Medicaid funds that the provider receives from the State. Medicaid patients benefit from this contract by receiving immediate, quality medical attention, and paying a relatively affordable medical bill. Thus ... guaranteeing payment to the hospital is the "quid" for which the hospital's no additional payment promise was in part the "quo."[36]

We agree with the *Mallo* court that Medicaid recipients are the intended beneficiaries of the prohibition on balance billing. That intent is evident from the state and federal Medicaid statutes and regulations and from the terms of the provider agreement.

The hospital asserts that Smallwood has no rights as a third-party beneficiary because he had an alternative administrative remedy through the state's "fair hearing process" and because the state has the regulatory authority to enforce the balance billing prohibition against providers. But potential enforcement of the contract by the contracting parties or through other enforcement mechanisms does not necessarily foreclose a third-party beneficiary's right to enforce a contractual promise.[37] Moreover, we are not convinced that there is an administrative hearing process available to complainants like Smallwood. Neither the superior court nor the hospital identified the specific regulatory provision that provides Smallwood with an administrative remedy. The Alaska Administrative Code provides Medicaid recipients an opportunity for an administrative hearing when a request for an application is denied, when a claim for assistance is denied, when the state intends to modify or terminate the recipient's benefits, or when a request for a covered Medicaid service is denied.[38] As Smallwood points out, it is not clear that a claim that a provider "balance billed" a recipient fits within this hearing process.

We recognize that the state may impose sanctions on providers that balance bill.[39] And we recognize that the superior court stated that it would give a copy of its order to the Alaska Attorney General and the Commissioner of Health and Social Services so the state could resolve these issues. But the hospital does not point to anything in the record bearing on whether the state would

**35.** *Mallo v. Pub. Health Trust of Dade County, Fla.,* 88 F.Supp.2d 1376, 1385 (S.D.Fla.2000).

**36.** *Id.* at 1385 (citations omitted).

**37.** *See Zigas v.Super. Ct.,* 120 Cal.App.3d 827, 839–40, 174 Cal.Rptr. 806 (1981) (holding that tenants were entitled to maintain third-party cause of action to enforce financing agreement between landlords and Department of Housing and Urban Development even though federal agency also had enforcement powers).

**38.** 7 AAC 49.020 (2004).

**39.** *See* 7 AAC 43.950 ("Sanctions may be imposed [on providers] for any of the following reasons: ... (7) breaching the term of the Medicaid provider agreement ... (10) violating any provision of AS 47.07 or any regulation adopted under it; ... (16) following a documented practice of charging recipients for services an amount above payment made by the division.").

initiate an inquiry into balance billing or would respond to a Medicaid recipient's inquiry or even whether the state will respond to the superior court's notification in this case. Smallwood's right of action is therefore not foreclosed by these other potential sources of enforcement.

Intended third-party beneficiaries may enforce the contract terms intended to benefit them.[40] We therefore hold that Smallwood may enforce the balance billing prohibition as a third-party beneficiary of the provider agreement and that prohibition.

**2. Smallwood's claims for declaratory and injunctive relief must be reconsidered on remand in light of our ruling that he has a private right of action here.**

Given our holding that Smallwood may enforce the prohibition on balance billing as a third-party beneficiary of the provider agreement, Smallwood's claims for declaratory and injunctive relief must be reconsidered on remand. We address a number of the concerns expressed by the parties and the superior court to clarify the contours of the issues on remand.

In addition to stating that it is "doubtful" Smallwood has a private right of action, the superior court denied the broad relief he requested—that the hospital be ordered to revise its billing system. The court reasoned that: (1) the state is partly responsible for Smallwood's injury because it does not notify Medicaid recipients of copay decisions and does not require medical providers to itemize copay amounts in their bills, but the state was not joined as a party; (2) Smallwood did not bring his claim as a class action on behalf of all adult Medicaid recipients; and (3) resolution of the billing system problems falls within the heavily regulated and complex Medicaid program and should be resolved by the state with input from providers. We reject these three factors as bases for denying all relief, but recognize that the superior court may consider the second and third factors in fashioning appropriate relief in this case.

First, the superior court stated that the hospital is only "partly responsible" for overcharging Smallwood and suggested that the state is also partly responsible for the overcharges. The state is not partly responsible for Smallwood's overcharges. First Health, the state's agent, authorized the hospital to bill Smallwood a copay amount of $483.63. The hospital, in turn, billed Smallwood $743.46. The superior court stated that the state and First Health were partly at fault because if "Smallwood had received a copy of the [remittance advice] issued by First Health or some other notice regarding his required copay, he could have required [the hospital] to adjust his bills accordingly." But whether the state or First Health notified Smallwood of the copay amount does not affect the fact that the hospital over-billed Smallwood; it only affects how Smallwood could respond to the overcharge. The state did everything it needed to do to inform the hospital of the allowable copayment. The hospital cannot avoid its responsibility for overcharging Smallwood by claiming that the state or First Health were partly or wholly responsible.

The superior court's statement that the hospital is only "partly responsible" implies that the state must be a party before the court can order modification of the billing system. The laws governing Medicaid provider billing do not require providers to itemize copayments in their bills. But this fact does not prohibit the trial court from fashioning such relief. The state is not a necessary party under Alaska Civil Rule 19(a). As we explain further below, however, it was reasonable for the court to consider the broader regulatory context of the claim against the hospital.

Second, the fact Smallwood did not bring his lawsuit as a class action does not prevent him from obtaining appropriate individualized declaratory or injunctive relief. Smallwood is correct in asserting that a trial court may issue an injunction even when a suit is

**40.** *Howell,* 943 P.2d at 1207; *Neal,* 895 P.2d at 505; *Kodiak Elec.,* 694 P.2d at 154; *Osborne,* 607 P.2d at 371.

brought on behalf of an individual.[41] Nonetheless, we do not read the superior court's decision as suggesting that the superior court thought that the non-class nature of the action prevented it from granting necessary relief to Smallwood. Indeed, the court effectively granted injunctive relief to Smallwood when it required the hospital to ensure that its invoices to Smallwood not exceed the Medicaid authorized copays.

The individual nature of his claim remains relevant to the extent Smallwood's third-party beneficiary claim may seek relief broader than that strictly necessary to protect his individual interests. In noting that Smallwood did not bring his claim as a class action on behalf of all adult Medicaid recipients, the superior court explained why it was not ordering the hospital to modify its entire billing system. Of course, if only an overhaul of the hospital's billing system would protect Smallwood from balance billing, his status as an individual litigant would not prevent the court from ordering that relief.[42] But the availability here of narrowly tailored individualized relief—ordering the hospital to refrain from overcharging Smallwood in the future—supports the superior court's reasoning that broader injunctive relief was not necessary, at least as to Smallwood's third-party beneficiary claim.[43]

Finally, we recognize, as did the superior court, that the Medicaid system is heavily regulated and complex and that the state already regulates the relationship between providers and Medicaid recipients. The superior court had these considerations in mind when it refused to order the hospital to modify its entire billing system, and instead ordered it not to overcharge Smallwood in the future and sent a copy of its order to the Alaska Attorney General and the Commis-

sioner of Health and Social Services. The state might choose to resolve the billing system problems by, for example, requiring all providers to provide notice of First Health-approved copay amounts. Or the state could promulgate regulations requiring First Health to send a copy of the remittance advice to the Medicaid recipient. But because the state might choose to do nothing, in fashioning relief on remand the superior court should only take into account any actual plans the state has for resolving or preventing such problems.

The hospital overcharged Smallwood. The hospital admitted that its billing system will continue to charge Medicaid recipients for amounts rejected by First Health and so will likely continue to overcharge Medicaid recipients like Smallwood. The hospital is solely responsible for those overcharges. Smallwood may assert the balance billing prohibition as a defense to claims brought by the hospital against him. He may also affirmatively sue for relief as a third-party beneficiary of the provider agreement. We remand for determination of the appropriate relief in light of our holding here.

### D. It Was Error To Reject Smallwood's UTPA Claim.

■ The superior court concluded that Smallwood's UTPA claim was exempted from the UTPA because balance billing is already prohibited under Medicaid law. Smallwood argues on appeal that the superior court failed to address his actual UTPA claim that the hospital's bills are confusing. The hospital admits that the superior court did not address Smallwood's billing format claim, but urges us to affirm the superior court's decision regardless. It argues that the UTPA

**41.** See Alaska R.R. Corp. v. Native Vill. of Eklutna, 43 P.3d 588, 597–98 (Alaska 2002) (holding that trial court did not abuse its discretion when it enjoined company's quarrying activities in suit brought by native village, residents, and Municipality of Anchorage).

**42.** Cf. Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1501 (9th Cir.1996) (affirming in non-class action statewide injunction on enforcement of motorcycle helmet law because plaintiffs could only be protected by statewide relief).

**43.** We assume, without deciding, that the scope of available injunctive relief may be broader if on remand Smallwood prevails on his Unfair Trade Practices Act claim discussed below in Part III.D. Cf. Dee Prigdon, CONSUMER PROTECTION AND THE LAW § 6:9 (2005) (noting that some states allow an "individual plaintiff who wishes to act as a private attorney general [to] seek to obtain not only damages for his or her own injuries, but also to enjoin any future violations of the state consumer protection act by the same defendant").

claim fails because Smallwood did not suffer actual damages or show that the billing format confused him in the sale of medical services, and because his claim is time-barred.

### 1. Smallwood's claim is not exempted from the UTPA.

Count IV of Smallwood's complaint alleged that the hospital's billing practices violate AS 45.50.471(b)(11) [44] "because they create the likelihood of confusion or misunderstanding and have in fact misled Mr. Smallwood in connection with the sale of medical services." [45] Alaska Statute 45.50.471(a) declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" are "unlawful." Subsection .471(b)(11) defines "unfair methods of competition" and "unfair or deceptive acts or practices" as including "engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services." [46] But AS 45.50.481(a)(1) exempts from the UTPA any acts or transactions "regulated under laws administered by the state, [or] by a regulatory board or commission ... unless the law regulating the act or transaction does not prohibit the practices declared unlawful in AS 45.50.471."

We apply a two-part test to determine whether an act or practice is exempt under AS 45.50.481(a)(1). In *State v. O'Neill Investigations, Inc.*, we explained that subsection .481(a)(1) exempts unfair acts and practices from the purview of the UTPA "only where the business is both regulated elsewhere and the unfair acts and practices are therein prohibited." [47] In this case, provider billing is regulated by federal and state Medicaid laws and regulations. [48] But none of those statutory provisions or regulations governs the *form* of the provider billing statement or prohibits billing practices that "creat[e][a] likelihood of confusion or misunderstanding." [49] Smallwood's claim is therefore not exempted from the UTPA by AS 45.50.481(a)(1).

### 2. Smallwood's claims for injunctive and declaratory relief are not time-barred.

■ The hospital argues here, as it did below, that Smallwood's UTPA claim is time-barred by AS 45.50.531(f). The superior court did not address the statute of limitations issue.

Alaska Statute 45.50.531(f) bars UTPA damages claims filed more than two years "after the person discovers or reasonably should have discovered that the loss resulted from an act or practice declared unlawful by AS 45.50.471." There is no corollary time bar in the UTPA for claims for declaratory or injunctive relief. [50]

Smallwood's complaint pleaded a claim for damages, but his briefing on summary judgment explained that he had not alleged "actual damages" against the hospital. [51] On appeal Smallwood has waived any claim for monetary damages by conceding in his reply brief that he did not seek actual damages in the superior court. We therefore do not need to consider whether any damages claim by Smallwood would have been time-barred

---

44. Smallwood's complaint cited the statutory provision as AS 45.50.471(b)(10).

45. *See* AS 45.50.471(b)(11).

46. *Id.*

47. *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *see also Matanuska Maid, Inc. v. State*, 620 P.2d 182, 186 (Alaska 1980) (quoting *O'Neill Investigations* ).

48. *See* 42 U.S.C. § 1396a(a)(25)(C); 42 C.F.R. § 447.15; AS 47.07.042; 7 AAC 43.050.

49. *See* AS 45.50.471(b)(11).

50. *See* AS 45.50.535.

51. Smallwood's complaint requested "[d]amages against AFS and CPGH." In his response to the hospital's first set of interrogatories, Smallwood stated that he was seeking "statutory damages available under the Alaska Consumer Protection Act." But as the hospital explained in its motion for summary judgment, Smallwood never alleged in his complaint that he had suffered any actual damages and did not itemize in his answers to the interrogatories any actual damages or ascertainable loss of money.

under AS 45.50.531(f).[52] And because AS 45.50.535—the provision through which a plaintiff may pursue injunctive relief for violations of the UTPA—does not provide a time limitation, we hold that Smallwood's UTPA claim for injunctive relief is not time-barred.[53]

### 3. Smallwood may still pursue injunctive relief even though he did not allege actual damages.

■ The hospital also argues that Smallwood cannot assert a UTPA claim because he did not suffer actual damages. Although Smallwood admits he never alleged actual damages, he contends that he may still seek injunctive relief.

A plaintiff may seek injunctive relief under the UTPA even if he has not suffered actual damages. Alaska Statute 45.50.535 states that "any person who was the victim of the unlawful act, *whether or not the person suffered actual damages,* may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice declared unlawful under AS 45.50.471." [54] The hospital and Smallwood disagree whether, in the words of AS 45.50.471(11), the billing format "creat[ed] a likelihood of confusion or of misunderstanding" and "misle[d], deceive[d] or damage[d] [Smallwood] in connection with the sale or advertisement of goods or services." [55] We remand this issue for determination whether injunctive relief is appropriate given our holding that the alleged violation is not exempted or time-barred.[56]

### E. The Hospital's Counterclaim Is Not Time–Barred.

■ Smallwood argues that any debt to the hospital accruing before November 1, 1999 is time-barred.[57] The superior court did not decide the issue when Smallwood raised it below.

The parties' stipulation of facts at trial establishes the following applicable dates: the balances due on Smallwood's accounts accrued between September 11, 1998 and March 24, 2000. AFS filed its small claims action against Smallwood on May 3, 2001. The district court dismissed the small claims action with prejudice on March 18, 2002. Because that action should not have been dismissed with prejudice, on November 20, 2002 the court vacated the earlier dismissal and entered a dismissal of the small claims action without prejudice. The hospital re-filed its claims against Smallwood by supplemental pleading entitled "Counterclaim" on July 25, 2002. The superior court granted the hospital's motion for permission to file its counterclaim on November 1, 2002, accepting the counterclaim as filed July 25, 2002.

The applicable statute of limitations, AS 09.10.053, requires that actions upon a contract or liability be brought within three years. The hospital argues that the statute of limitations was tolled while the suit between Smallwood and AFS was pending, and that the Alaska savings statute provided an additional year within which the hospital could file its counterclaim. Smallwood responds that the hospital's assertions regarding tolling and the savings statute are with-

---

**52.** Smallwood argues on appeal that his claim is not time-barred because the hospital's violations were ongoing and continued into the period of the statute of limitations. Because Smallwood is not pursuing any claim for damages, we do not need to decide whether such a claim would have been timely under the "continuing violation" doctrine. *See Alakayak v. British Columbia Packers, Ltd.,* 48 P.3d 432, 462 (Alaska 2002) ("The effect ... of a continuing violation, is to provide a new, and perhaps perpetually rolling, date from which the statute of limitations may begin.").

**53.** The hospital points to no other statute of limitations that arguably bars Smallwood's UTPA claim.

**54.** AS 45.50.535(a) (emphasis added).

**55.** *See* AS 45.50.471(11).

**56.** The superior court may also consider whether to grant declaratory relief; we express no opinion whether such relief would be appropriate at this stage of the controversy between the parties. *See Lowell v. Hayes,* 117 P.3d 745, 755–56 (Alaska 2005) ("[D]eclaratory relief is generally used to settle a controversy that has yet to ripen into violations of law.") (internal quotation marks omitted).

**57.** $355.47 of the $483.63 the hospital sought accrued before November 1, 1999.

out merit because the hospital was not a plaintiff in the small claims action brought by AFS.

 Whether an assignee's conduct in filing suit on the assigned claims may toll the applicable statute of limitations for the assignor is an issue of first impression in Alaska. We conclude that an assignee's conduct may toll the statute of limitations. Statutes of limitation are intended to promote timely and efficient litigation of claims and to protect defendants from the burden of litigating stale claims by putting defendants on notice of the claims against them so they may prepare for litigation while evidence is still fresh.[58] Neither of these purposes would be served by not allowing an assignee's acts to toll the statute of limitations. AFS tolled the statute of limitations by filing its complaint.[59] Smallwood was on notice of the claims against him when AFS served its complaint. And it was per the settlement between AFS and Smallwood that the claim was assigned back to the hospital. Per that settlement, the hospital stood in AFS's shoes as AFS's successor in interest. The statute of limitations was therefore tolled during the pendency of AFS's small claims action against Smallwood.

 The hospital also argues that the savings statute, AS 09.10.240, provided an additional year within which the hospital could file its counterclaim. We agree. Alaska Statute 09.10.240 provides:

> If an action is commenced within the time prescribed and is dismissed upon the trial or upon appeal after the time limited for bringing a new action, the plaintiff, or, if the plaintiff dies and the cause of action in favor the plaintiff survives, the heirs or representatives may commence a new action upon the cause of action within one year after the dismissal or reversal on appeal.

For the same reasons that we concluded AFS's suit tolled the statute of limitations, we conclude that the hospital and AFS are a single "plaintiff" under AS 09.10.240. Smallwood points to two Ohio decisions that held that distinct parties cannot act as a single plaintiff for the purposes of Ohio's savings statute.[60] But those decisions are not binding on us, and other courts have applied savings statutes similar to Alaska's to allow the renewal of an action by an assignee or a transferee of the original plaintiff's rights.[61]

We therefore conclude that AFS's suit tolled the statute of limitations and that the hospital and AFS are a single plaintiff for purposes of AS 09.10.240.

The parties disagree about the date on which the hospital filed its counterclaim. There is also potential disagreement about the date the AFS suit was dismissed. But we do not need to remand the issue because even if we accepted the dates most favorable to Smallwood, the hospital's entire counterclaim was still timely filed.[62] We therefore conclude that the statute of limitations did not bar any part of the hospital's counterclaim for authorized charges accrued between September 11, 1998 and March 24, 2000.

**58.** *See* 51 Am.Jur.2d *Limitations of Actions* § 13 (2000).

**59.** *See Silverton v. Marler*, 389 P.2d 3, 5 (Alaska 1964) (holding that filing of complaint interrupts running of statute of limitations).

**60.** *See Nat'l Fire Ins. v. Joslyn Mfg.*, 25 Ohio App.2d 13, 265 N.E.2d 791 (1971) (rejecting insurance company's attempt to use savings statute to bring claim against lessee after previous claim brought by insured lessor had been dismissed because insured and insurance company were not same plaintiffs); *see also Children's Hosp. v. Ohio Dep't of Pub. Welfare*, 69 Ohio St.2d 523, 433 N.E.2d 187 (1982) (holding that savings statute does not apply when parties in original action differ from those in new action).

**61.** *See Dressler v. Carpenter*, 107 Ark. 353, 155 S.W. 108, 109 (1913); *Van Der Stegen v. Neuss, H. & Co.*, 270 N.Y. 55, 200 N.E. 577 (1936); *see also* C.P. Jhong, Annotation, *Applicability, as Affected by Change in Parties, of Statute Permitting Commencement of New Action Within Specified Time After Failure of Prior Action Not on Merits*, 1967 WL 15678, 13 A.L.R.3d 848, § 8 (2006).

**62.** Even if we assume that the AFS suit was dismissed on March 18, 2002, and that the counterclaim was not filed until November 2, 2002, the counterclaim was filed before the end of the extra year provided by the savings statute.

### F. Other Issues Raised by the Parties Must Be Considered on Remand.

The parties raise other arguments regarding prevailing party status, public interest litigant status, and attorney's fees. Because the rulings underlying these issues may change on remand, we do not address these issues here.

## IV. CONCLUSION

We conclude that Smallwood is a third-party beneficiary of the provider agreement and that he therefore has a right of action to enforce the prohibition on balance billing. We consequently AFFIRM that part of the final judgment that ordered the hospital to ensure that its invoices to Smallwood do not exceed the Medicaid authorized copays. And because we conclude that the hospital's counterclaim was not time-barred, we AFFIRM that part of the final judgment regarding the hospital's counterclaim and requiring Smallwood to pay the principal amount of $483.63 plus applicable interest. But we VACATE that part of the final judgment that denied Smallwood's claims for injunctive and declaratory relief and REMAND for consideration of those claims. We also VACATE that part of the February 13, 2004 order that rejected Smallwood's UTPA claim and REMAND for reconsideration of that claim. Finally, we VACATE the order for attorney's fees and REMAND the issues concerning attorney's fees.